**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 2026-cv-1950**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARMENT OF PUBLIC SAFETY,

      Defendants.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiff, the United States of America submits the following Complaint against Defendant State of Colorado (the "State") and Defendant Colorado Department of Public Safety (the "Department"). The State and the Department shall be referred to herein collectively as "Defendants."

## I. INTRODUCTION

1. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

2. The Second Amendment protects the right of law-abiding citizens to keep and bear arms in common use for lawful purposes. *D.C. v. Heller*, 554 U.S. 570, 625 (2008).

3. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

4.      Colo. Rev. Stat. § 18-12-302 (the "Magazine Ban") makes it a crime to sell, transfer, or possess in the State a "large-capacity magazine" as defined in Colo. Rev. Stat. § 18-12-301(2).

5.      The Magazine Ban uses politically charged rhetoric to describe the arms it bans. The Magazine Ban's characterization of these magazines as "large capacity" is a misnomer, because magazines capable of holding more than 15 rounds are, in fact, standard capacity magazines for many popular firearms, including the AR-15 rifle, the most popular rifle in America. The United States will not adopt the State's tendentious term.  Instead, for purposes of this Complaint, the term "Banned Magazine" shall have the same meaning as the term "large-capacity magazine" in Colo. Rev. Stat. § 18-12-301(2).

6.      Law-abiding Americans own and use for lawful purposes literally hundreds of millions of magazines such as those banned by the State.  A detachable magazine is an integral part of most semi-automatic firearms, including the AR-15 rifle. As such, they are covered by the Second Amendment's right to keep and bear arms.  The State's magazine ban is a ban on an arm in common use for lawful by law-abiding citizens.  Therefore, the Magazine Ban violates the Second Amendment, and the United States brings this action to vindicate the rights of Colorado citizens whose rights have been—and are continuing to be—violated by Defendants.

## PARTIES

7.      Plaintiff is the United States of America.

8.      The State is a state within the United States of America.

9.      The Department is an agency of the State.  Within the Department, the Colorado State Patrol (the "State Patrol") and the Colorado Bureau of Investigation ("CBI") are statewide law enforcement agencies that enforce the Magazine Ban.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

11.     The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601.  And the United States is authorized to initiate this action against the Defendants under that Act.

12.     The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred therein.

## GENERAL ALLEGATIONS

**A.      The Colorado Statute**

14.     The relevant portion of the Magazine Ban states that "a person who sells, transfers, or possesses a large-capacity magazine commits a class 1 misdemeanor."  Colo. Rev. Stat. § 18-12-302(1)(a).

15.     The term "large-capacity magazine" means:

(I) A fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition;

(II) A fixed, tubular shotgun magazine that holds more than twenty-eight inches of shotgun shells, including any extension device that is attached to the magazine and holds additional shotgun shells; or

(III) A nontubular, detachable magazine, box, drum, feed strip, or similar device that is capable of accepting more than eight shotgun shells when combined with a fixed magazine.

Colo. Rev. Stat. § 18-12-302(2)(a).

3

**B.      Standard of Review**

16.      In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

17.      Under step one of the *Bruen* test, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  Another way of saying this is that a law that restricts conduct covered by the plain text of the Second Amendment is presumptively unconstitutional.

18.      At step two, the government—i.e., the Defendants, here—has an opportunity to rebut any presumption of unconstitutionality that arose under step one by demonstrating that its regulation is consistent with the Nation's historical tradition of firearm regulation.  "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id*.

19.      Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (internal citation and quotation marks omitted).

**C.      Magazines Are "Arms"**

20.      "When 'a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate of that act.'  Antonin Scalia & Bryan A. Garner, *Reading Law: the Interpretation of Legal Texts* 96, 192–94 (2012) (explaining Predicate-act canon); *see also Luis v.*

*United States*, 578 U.S. 5 (2016) (Thomas, J., concurring) ("Constitutional rights . . . implicitly protect those closely related acts necessary to their exercise."); *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025). Detachable magazines such as those banned by the State fall into this category. *See Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 116 (3d Cir. 2018) (Magazines are necessary for semi-automatic guns to function as intended, and therefore "magazines are 'arms' within the meaning of the Second Amendment."), *abrogated on other grounds by Bruen,* 597 U.S. at 19.

21.    The Magazine Ban bans bearable arms. Therefore, the Magazine Ban implicates the plain text of the Second Amendment. Under *Bruen* step one, the Magazine Ban is presumptively unconstitutional. As set forth below, Defendants will not be able to rebut this presumption.

**D.    The Banned Magazines Are in Common Use**

22.    There is no historical tradition of banning arms in common use. Therefore, the Second Amendment protects arms typically possessed by law-abiding citizens for lawful purposes that are in "common use" today. *United States v. Morgan*, 150 F.4th 1339, 1346 (10th Cir.) (internal citations and quotation marks omitted).

23.    In *Colorado Outfitters Assoc. v. Hickenlooper*, Case No. 13-cv-1300 (D. Colo.) ("*Outfitters*"), Colorado Governor Hickenlooper was sued in his official capacity. *Cooke v. Hickenlooper*, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom. Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016).

24.    In *Rocky Mountain Gunowners v. Hickenlooper*, Case No. 2013CV33879 (Denv. Dist. Ct.) ("*RMGO*"), Governor Hickenlooper was sued in his official capacity. *Rocky Mountain Gun Owners v. Polis,* 2020 CO 66, 467 P.3d 314.

25.     A suit against a state official in his or her official capacity is the same as a suit against the State itself.

26.     The State entered into certain stipulations in *Outfitters*.  *See* ECF 119 filed in *Outfitters* on January 31, 2014. Individual stipulations entered into in *Outfitters* shall be referred to as "*Outfitters* Stip. ___."

27.     The State entered into certain stipulations in *RMGO*.  *See* Exhibit A to "Proposed Trial Management Order filed April 4, 2017, in *RMGO*. Individual stipulations entered into in *RMGO* shall be referred to as "*RMGO* Stip. ___."

28.     More than 300,000,000 firearms are lawfully owned in the United States.  *Outfitters* Stip. 10.

29.     A significant percentage of firearms privately owned are semi-automatic, most of which utilize a detachable-box magazine.  *Outfitters* Stip. 10.

30.     The number of lawfully owned semi-automatic firearms in the United States that utilize a magazine like the ones banned by the State is in the tens of millions.  *Outfitters* Stip. 10; *RMGO* Stip. 6.

31.     Several million AR-15 platform rifles have been lawfully purchased in the United States and are used for lawful purposes.  *Outfitters* Stip. 12.

32.     In states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds, and the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds. *Outfitters* Stip. 15; *RMGO* Stip. 10.

33.    Semi-automatic firearms equipped with magazines like those banned by the State are used for multiple lawful purposes, including recreational target shooting, competition shooting, and collecting, and are kept for home defense and defense outside the home.  *Outfitters* Stip. 19.

34.    Semi-automatic pistols and rifles cannot function as designed without a magazine. *Outfitters* Stip. 20; *RMGO* Stip. 14.

35.    Semi-automatic firearms are designed to discharge a bullet for each pull of the trigger, automatically extract and eject the spent cartridge case from the firing chamber, re-cock the firing mechanism, and load a new cartridge into the firing chamber so it can be fired again with another pull of the trigger.  *Outfitters* Stip. 20; *RMGO* Stip. 15.

36.    Many full-sized 9 mm semi-automatic pistols are sold at retail with magazines with capacities of greater than 15 rounds, for example the Glock 17, which is one of the most popular handguns sold in the United States.  *Outfitters* Stip. 22; *RMGO* Stip. 17.

37.    The number of magazines like those banned by the State in the United States is in the tens of millions.  *Outfitters* Stip. 25.

38.    In the State of Colorado alone, the number of magazines like those banned by the State is in the millions.  *Outfitters* Stip. 26; *RMGO* Stip. 20.

39.    Prior to the effective date of the Magazine Ban, magazines like those banned by the State were not unusual in Colorado.  *RMGO* Stip. 21.

40.    The National Shooting Sports Foundation ("NSSF") is the trade association of the firearms industry.

41.    According to the NSSF Detachable Magazine Report (1990 – 2021), in the United States there are at least 448 million magazines with a capacity in excess of 15 rounds.

42.    The State has already admitted that magazines like those it has banned are in common use by law-abiding Americans for lawful purposes, including self-defense.  Therefore, the Magazine Ban—which makes it a crime to sell, transfer, or possess such a magazine—violates the Second Amendment.

**E.    The Department's Law Enforcement Officers**

43.    The Department is a department of the State.  Colo. Rev. Stat. § 24-1-128.6(1).

44.    The State Patrol and CBI are divisions of the Department.  Colo. Rev. Stat. § 24-1-128.6(2).

45.    All officers of the State Patrol have the power to make arrests for violation of any criminal law of the State.  Colo. Rev. Stat. § 24-33.5-213(1)(a)(I).  All officers of the State Patrol are commanded to make arrests when a valid warrant for arrest issues.

46.    CBI agents perform duties in the enforcement of the criminal laws of the State.  They are vested with the powers of peace officers of the State and have all the powers of any sheriff or police or other peace officer.  Colo. Rev. Stat. § 24-33.5-409.

47.    As used in this Complaint, the term "CO Law Enforcement Officers" shall mean officers of the State Patrol and CBI agents.

48.    Pursuant to Colo. Rev. Stat. § 16-3-108, when a court issues an arrest warrant in connection with an alleged violation of the Magazine Ban, it commands the CO Law Enforcement Officers involved to arrest the person named in the warrant "and to take the person without unnecessary delay before the nearest judge of a court of record."

49.    The CO Law Enforcement Officers are under a duty to enforce the criminal laws of the State.

50.    The Magazine Ban is a criminal law of the State.

51.     Thus, the CO Law Enforcement Officers are under a duty to enforce the Magazine Ban.

52.     The CO Law Enforcement Officers have, in fact, routinely enforced the Magazine Ban from 2013 to the present time and will continue to do so in the future unless enjoined.

**F.     The United States Is Authorized to Bring This Action under 34 U.S.C. § 12601**

53.     As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

54.     The State is a governmental authority, as that term is used in Section 12601(a).

55.     The Department is a governmental authority, as that term is used in Section 12601(a).

56.     The CO Law Enforcement Officers are agents of (and are otherwise acting on behalf of) the State and the Department for purposes of enforcing the State's criminal laws, including the Magazine Ban.

57.     The CO Law Enforcement Officers are fulfilling (and will continue to fulfill unless enjoined) their statutory duty to enforce the criminal laws of the State, including the Magazine Ban.  When the CO Law Enforcement Officers enforce the Magazine Ban, they are engaging in a pattern or practice of conduct by law enforcement officers.

58.     As set forth above, the Magazine Ban violates the Second Amendment. Accordingly, there is a pattern or practice of conduct by the CO Law Enforcement Officers that deprives persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

59.      34 U.S.C. § 12601(b) states:

**Civil action by Attorney General** Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[1] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

60.      The United States brings this action pursuant to the authority set forth in Section 12601(b) to remedy Defendants' violation of Section 12601(a).

**FIRST CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**

61.      Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

62.      Defendants have engaged in a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured and protected by the Constitution in violation of 34 U.S.C. § 12601(a).

63.      Unless this Court enjoins Defendants and also grants the declaratory relief the United States describes below, Defendants will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights to acquire and possess arms protected by the Second Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A.      Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201(b), declaring that:

    (1)      The State is a "governmental authority" as that term is used in Section 12601(a);

    (2)      The Department is a "governmental authority" as that term is used in Section 12601(a);

---

[1] [*sic*] This should state "paragraph (b)."

(3)     The CO Law Enforcement Officers (as defined above) are "law enforcement officers" as that term is used in Section 12601(a);

(4)     When the CO Law Enforcement Offices enforce the Magazine Ban, they are acting as agents of (or otherwise acting on behalf of) Defendants;

(5)     When the CO Law Enforcement Officers enforce the Magazine Ban, they are engaging in a pattern or practice of conduct by law enforcement officers; and

(6)     The effect of that pattern or practice of conduct is to deprive the people of Colorado of their rights guaranteed by the Second Amendment.

B.     Entry of permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants and their agents from enforcing the Magazine Ban, including an order that:

(1)     Defendants and their agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

(2)     Defendants and their agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

(3)     Defendants adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

C.     Such other and additional relief as the interests of justice may require.

11

DATED: May 6, 2026

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS OSETE
Principal Deputy Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

*/s/ Barry K. Arrington*
BARRY K. ARRINGTON
Acting Chief
Second Amendment Section

WILLIAM J. HANRAHAN
PATRICK TODD
Trial Attorneys
Second Amendment Section

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone:(202) 304-8447
E-Mail: barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA