**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01950-SKC-TPO

UNITED STATES OF AMERICA,

     Plaintiff,

v.

STATE OF COLORADO,
COLORADO DEPARTMENT OF PUBLIC SAFETY

     Defendants.

---

**MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.     Colorado's reasonable restrictions on large-capacity magazines. .................... 2

II.    The Department of Justice's tailored authority to address "pattern or
practice" police misconduct. .................................................................................. 4

     A.    Text and history of 34 U.S.C. § 12601. .................................................. 4

     B.    The United States' past practice. ........................................................... 7

III.   Summary of the Complaint. ................................................................................... 9

LEGAL STANDARDS .................................................................................................... 10

ARGUMENT .................................................................................................................... 11

I.     The United States' facial challenge to Colorado's restrictions on large-
capacity magazines is not cognizable under Section 12601. ........................... 11

     A.    Section 12601 does not authorize facial challenges to legislative
enactments. ............................................................................................. 12

          1.    The plain text of Section 12601 does not authorize facial
challenges. ................................................................................. 12

          2.    The history and context confirm Section 12601's narrow focus on
redressing systemic police misconduct. ................................... 16

          3.    For more than 30 years, the United States did not use Section
12601 to launch facial challenges. ........................................... 19

     B.    The Complaint brings a facial challenge that Section 12601 does not
permit. ..................................................................................................... 20

II.    The Complaint fails to allege a pattern or practice by law enforcement
officers. .................................................................................................................. 22

III.   The alleged constitutional violation cannot be redressed by this suit ........... 23

     A.    The United States' claim is not redressable because it will not prevent
enforcement of the statute. ................................................................... 25

     B.    The United States will never be able to establish redressability
because Section 12601 does not afford relief against prosecutors for
their independent prosecutorial decisions. .......................................... 28

IV.   The United States cannot cure the Complaint's deficiencies and the Court
should dismiss without leave to amend. .............................................................. 30

CONCLUSION ................................................................................................................. 30

**INTRODUCTION**

In the wake of multiple horrific mass shootings, the Colorado General Assembly enacted commonsense limitations on large-capacity magazines. Those limitations, which have been in place for more than a decade, have saved countless lives. Over the past 13 years, state and federal courts have repeatedly rejected challenges to this statute in part because this reasonable limitation leaves ample room for citizens to bear arms consistent with the Second Amendment.

Notwithstanding this history, the Department of Justice ("DOJ") now seeks to bring a late facial challenge to Colorado's longstanding large-capacity magazine restriction. But DOJ lacks authority to bring that claim. So instead, DOJ attempts to shoehorn its facial challenge through its limited authority to redress "pattern or practice" law enforcement misconduct. Having abdicated its responsibility to redress true police misconduct and brutality, DOJ now claims that through this limited authority Congress actually authorized a sweeping new cause of action by which DOJ can challenge any law enacted by a state's legislature. The whole of DOJ's logic is: "the Magazine Ban violates the Second Amendment. Accordingly, there is a pattern or practice of conduct by the CO Law Enforcement Officers that deprives persons of rights, privileges, or immunities secured or protected by the Constitution." ECF No. 1 ("Compl.") ¶ 58.

Under DOJ's theory, this congressional authorization has hidden in plain sight for more than 30 years, left untouched by Attorneys General of both parties,

1

and all ideologies. Of course, there is a reason DOJ has never asserted this authority—because it does not exist. The plain text, history, context, and past practice all confirm the obvious: the authority to redress "a pattern or practice of conduct by law enforcement officers," 34 U.S.C. § 12601(a), does not encompass authority to challenge legislative enactments. Relatedly, because the relief afforded by the statute is directly tailored to redressing specific law enforcement misconduct, the alleged injury is not redressable because any relief would be limited to two random law enforcement agencies. It will have no impact on enforcement because every prosecutor within the State can continue to exercise their discretion to prosecute violations of the law. The Court should dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) for failure to state a claim and lack of jurisdiction.

## BACKGROUND

### I.      Colorado's reasonable restrictions on large-capacity magazines.

Colorado suffered "two of the nation's most notorious mass shootings: Columbine High School in 1999 and the Aurora movie theater in 2012." *Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 317 (Colo. 2020). Collectively, the shooters in those tragedies killed over two dozen people and wounded scores more using firearms equipped with large-capacity magazines. *Id.* In response, the General Assembly passed a reasonable limitation on the availability of the types of large-capacity magazines the shooters employed to such deadly effect. *See id.*

2

Colorado Revised Statute Section 18-12-302(1)(a) includes a narrow restriction on the sale, transfer, or possession of a "large-capacity magazine," which include magazines of more than fifteen rounds of ammunition, *id.* § 18-12-301(2)(a)(I). The General Assembly limited the restriction to large-capacity magazines acquired after July 1, 2013. *Id.* § 18-12-302(2)(a). Furthermore, the statute exempts employees who bear firearms in the course of their duties, including members of the armed forces, *id.* § 18-12-302(3)(b)(I), and those employed by the United States government, *id.* § 18-12-302(3)(b)(II).

In the 13 years since the General Assembly placed these reasonable limitations on the sale, transfer, or possession of large-capacity magazines, federal and state courts have repeatedly rejected challenges brought under both the U.S. Constitution and the Colorado Constitution. *See, e.g., Colo. Outfitter Ass'n v. Hickenlooper*, 823 F.3d 537, 549–551 (10th Cir. 2016) (rejecting facial challenge on standing grounds); *Rocky Mountain Gun Owners v. Polis*, 467 P.3d at 329–331 (Colo. 2020) (rejecting facial challenge under the Colorado Constitution because the legislature reasonably exercised its police power and the statute does not interfere with Coloradans' right to bear arms in self-defense, leaving  "ample weapons" for that purpose); *People v. Sgaggio*, Case No. 2023CV296 (El Paso Cnty. Dist. Ct. Nov. 12, 2024) (rejecting constitutional challenge after concluding the large-capacity magazine restriction falls squarely within the nation's historical tradition of firearms regulation), *cert. denied*, No. 24SC805, 2025 WL 764629 (Colo. 2025); *see*

3

*also Gates v. Polis*, Case No. 22-cv-01866-GPG (D. Colo.) (plaintiffs stipulated to dismiss their facial challenge with prejudice after two years of litigation). In short, despite numerous challenges in state and federal court, no court has held that the General Assembly exceeded its authority by placing commonsense, reasonable limitations on the type of large-capacity magazines that were historically used to kill dozens of innocent Coloradans.

## II.    The Department of Justice's tailored authority to address "pattern or practice" police misconduct.

### A.    Text and history of 34 U.S.C. § 12601.

The United States brings its challenge to the large-capacity magazine restriction pursuant to 34 U.S.C. § 12601. Section 12601 authorizes a cause of action to redress "a pattern or practice of conduct by law enforcement officers" that deprives persons of constitutional or federal rights. 34 U.S.C. § 12601. Congress enacted Section 12601 in response to the 1991 beating of Rodney King by officers from the Los Angeles Police Department ("LAPD").[1] *See* Civ. Rts. Div., U.S. Dep't of Just., *Taking Stock: Report from the 2010 Roundtable on State and Local Law Enforcement Police Pattern or Practice Program (42 USC § 14141)* 1–2 (June 3, 2010) ("*Roundtable* Rep."), https://www.ojp.gov/pdffiles1/nij/234458.pdf (summarizing history). The statute was designed to address a specific problem: "the problem of

---

[1] This provision was originally codified at 42 U.S.C. § 14141 and was enacted as Title XXI, § 210401, of the Violent Crime Control and Law Enforcement Act of 1994 (the "1994 Crime Bill"). Pub. Law 103-322, 108 Stat. 1796, 2071 (Sept. 13, 1994).

excessive force" by law enforcement officers.[2] H.R. Rep. No. 102-242, at 24, 136

(1991). A House committee report detailed the brutalization of King by the LAPD

and noted that it was "not an aberration," but rather part of a "culture" of "excessive

force" in the LAPD. *Id.* at 135. The committee found it "apparent" that the "problem

is not limited to Los Angeles"—"[p]olice use of excessive force is a significant

problem in this country." *Id.* The report described other examples of "police

brutality" and "police misconduct" in police departments, many of which evidenced

"pattern[s] of misconduct," including "unconstitutional, harassing stops and

searches of minority individuals," and arrests of bystanders who "complain about

police actions." *Id.* at 136.

The committee found that DOJ "lack[ed] the authority to address systemic

patterns or practices of police misconduct." *Id.* at 137. Specifically, the committee

noted "the Federal Government's criminal authority to prosecute police brutality is

not adequate to address patterns or practices." *Id.* at 138. The committee further

considered a Third Circuit decision holding that the United States "does not have

implied statutory or constitutional authority to sue a local government or its

officials to enjoin violations of citizens' constitutional rights by police officers." *Id.* at

137 (citing *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980)). And

---

[2] Section 12601 was derived from the Police Accountability Act of 1991, which did
not become law. Because Section 12601 has no direct legislative history, courts and
the Justice Department have looked to the history of the Police Accountability Act,
its closely related predecessor. *See, e.g., United States v. City of Columbus*,
No. 99-cv-1097, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000).

5

the committee reasoned that after the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), individual litigants could not seek injunctive relief to address police abuses "absent a showing of likely future harm." *Id.* at 137.

Taken together, the committee identified a specific "gap in the law," where neither individual litigants "nor anyone else" could eliminate systemic constitutional violations caused by "police brutality." *Id.* at 137–38. Congress sought to "close this gap in the law, [by] authorizing the Attorney General . . . to sue for injunctive relief against abusive police practices." *Id.* at 138. The committee report cited two cases as illustrative of "the need for this authority and how it will work"; both involved excessive force. *Id.* at 138–39.

Congress therefore created a tailored cause of action to address that problem. It specifically targeted "a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). Congress authorized DOJ to "obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." *Id.* § 12601(b). Congress's tailored approach thus specifically targeted pattern and practice misconduct by law enforcement. It did not permit other types of constitutional challenges, such as challenges to legislative enactments.

6

### B.    The United States' past practice.

Following Section 12601's enactment, the Justice Department developed standard procedures for Section 12601 cases. Ex. A, Civ. Rts. Div., U.S. Dep't of Just., *The Civil Rights Division's Pattern and Practice Police Reform Work: 1994-Present* 1–2 (Jan. 2017) ("2017 Rep.").[3] Section 12601 cases have historically been handled by the Special Litigation Section in the Civil Rights Division, which "consists of career professional attorneys with many decades of collective experience working on police reform cases." *Id.* at 3. Section 12601 cases begin with a preliminary, internal inquiry of whether to open an investigation into a police department's conduct. *Id.* at 5. After that preliminary inquiry, if the Special Litigation Section recommends opening an investigation and the Assistant Attorney General agrees, the Civil Rights Division notifies the jurisdiction's chief executive officer and chief legal officer. *Id.* at 8. The Division then "makes the existence of the open investigation public." *Id.*

Investigations of police conduct are comprehensive and include extensive review of evidence, data, and documents along with direct observation of police officers. *Id.* at 9–10, 14. In addition to meeting with law enforcement leadership at the start of an investigation, "[t]he Division engages officers . . . at roll-calls [and] during ride-alongs," as well as "in face-to-face meetings." *Id.* at 10, 12. The Division

---

[3] The Court may take judicial notice of government records. *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 & n.1 (10th Cir. 2019); Fed. R. Evid. 201(b)(2).

also engages the community and "almost always conducts a series of community or town hall meetings." *Id.* at 13. Such detailed investigation is necessary because "the thoroughness of the Division's investigations underpins the credibility and effectiveness of its reform efforts." *Id.* at 15. At the end of an investigation, if the Division determines there is insufficient evidence of a "pattern or practice of conduct by law enforcement officers" that violates constitutional or statutory rights, it notifies the jurisdiction of the finding and closes the investigation. *Id.* at 15. If, however, the Division determines that there is reasonable cause to believe that such a Section 12601 pattern or practice exists, the Division sends a letter or report notifying the jurisdiction of the Division's determination. *Id.*

The focus then shifts to finding solutions to eliminate the unlawful pattern or practice. *Id.* at 17. "The Division's goal in every case is to avoid contentious litigation and begin the process of reform as quickly as possible." *Id.* at 18. Only if a reform agreement cannot be reached does the Division bring a lawsuit. *Id.* at 2, 18. At the time of the Division's 2017 report on the history of Section 12601, "of the many dozens of cases in which the Division has found a pattern or practice of police misconduct, all but six have resulted in a reform agreement without the need for civil litigation." *Id.* at 18.

Consistent with the statute, Section 12601 cases have "focus[ed] on systemic police misconduct." *Id.* at 1. Accordingly, "[m]any of the Division's investigations focus on core issues in police reform common to many law enforcement agencies—

8

such as patterns of unlawful use of force; unlawful stops, searches and arrests; and racial discrimination." *Id.* at 6. Indeed, "[a]ddressing systemic excessive force is one of the core functions of the Division's pattern-or-practice cases." *Id.* at 27.

Until recently, the Justice Department had never, to Defendants' knowledge, used a Section 12601 case to bring a facial challenge to a state or local statute duly enacted by the legislature, let alone to the legislature's regulation of individual criminal conduct. *See id.* at 41–48 (summarizing past Section 12601 cases); *Roundtable* Rep. at 8–9 (cataloguing Section 12601 cases and tagging the allegation type). In fact, the prior Trump administration pronounced that it "is not the responsibility of the federal government to manage non-federal law enforcement agencies." Ex. B, Memorandum from Jefferson B. Sessions III, Att'y Gen., to Heads of Dep't Components & U.S. Att'ys 1 (Mar. 31, 2017). In the United States' view at that time, "[t]his supervision can deprive the elected representatives of the people of the affected jurisdiction of control of their government." Ex. C, Memorandum from Jefferson B. Sessions III, Att'y Gen., to Heads of Civ. Litigating Components & U.S. Att'ys 2 (Nov. 7, 2018) (citing *Horne v. Flores*, 557 U.S. 433, 448 (2009)).

## III.    Summary of the Complaint.

This case began with a letter announcing DOJ's intent to file the present suit, unless Defendants agreed to "negotiations" that would ultimately "require" Colorado to cease enforcement of the large-capacity magazine restriction, declare it unconstitutional, and enter into an agreement to "permanently enjoin" its

9

enforcement. *See* Ex. D, Letter from Harmeet K. Dhillon, Asst. Att'y Gen., to Gov. Jared Polis and Att'y Gen. Phil Weiser 2 (Apr. 28, 2026). Departing from normal procedures for Section 12601 cases, DOJ did not publicly investigate Colorado's enforcement of the large-capacity magazine restriction, release the results of any investigation, or otherwise engage with Defendants before filing this lawsuit.

The Complaint brings a single claim pursuant to Section 12601. Rather than alleging any police misconduct, the Complaint instead facially attacks Colorado's large-capacity magazine restriction, Colo. Rev. Stat. § 18-12-301(2), claiming that this statute "violates the Second Amendment." Compl. ¶¶ 1–6, 42, 58. The Complaint then alleges that this purportedly unlawful statute is the basis for the "pattern or practice of conduct" claim. *Id.* ¶ 58 ("As set forth above, the Magazine Ban violates the Second Amendment. Accordingly, there is a pattern or practice of conduct by the CO Law Enforcement Officers that deprives persons of rights, privileges, or immunities secured or protected by the Constitution."). The Complaint seeks declaratory and injunctive relief to prevent two Colorado law enforcement agencies, Colorado State Patrol ("CSP") and Colorado Bureau of Investigation ("CBI"), from enforcing the statute.

## LEGAL STANDARDS

Rule 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court disregards labels, conclusory allegations, naked assertions, or formulaic recitations of the elements. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

A complaint may also be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.*

## ARGUMENT

### I.    The United States' facial challenge to Colorado's restrictions on large-capacity magazines is not cognizable under Section 12601.

In Section 12601, Congress established a limited cause of action to address systemic misconduct by law enforcement officers that existing law did not adequately remedy. This new cause of action did not grant the federal government broad authority to challenge any state or local law with which it disagreed. Instead, a review of Section 12601's plain text, history, and context demonstrate that the United States cannot use it to launch a facial challenge to a law.

Despite over 30 years of enforcement in line with this plain meaning, DOJ's newly created Second Amendment Unit now seeks to challenge a statute enacted by

11

the General Assembly in 2013. The United States' claim relies on an atextual reading of Section 12601 that is also not supported by history, past practice, or common sense. Section 12601 does not permit facial challenges to duly enacted laws; criminal statutes proscribe private conduct by individuals, and such legislative acts simply do not constitute "conduct by law enforcement." For the reasons below, the Court should reject the United States' unprecedented interpretation and find that this suit is not cognizable.

### A. Section 12601 does not authorize facial challenges to legislative enactments.

Section 12601's text, especially when interpreted in light of its context, history, and canons of interpretation, reveals that the statute does not permit facial attacks.

### 1. The plain text of Section 12601 does not authorize facial challenges.

"'The goal of statutory interpretation is to ascertain the congressional intent and give effect to the legislative will.'" *Kan. Nat. Res. Coal. v. United States Dept of Interior*, 971 F.3d 1222, 1235 (10th Cir. 2020) (quoting *In Re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018)). A reviewing court's "'proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.'" *Frontier Airlines, Inc. v. DHS*, 173 F.4th 1158, 1166 (10th Cir. 2026) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)). And in interpreting a statute's plain language, a court "'give[s] undefined terms their ordinary meanings,

12

considering both the specific context in which the word is used and the broader context of the statute as a whole.'" *Id.* (quoting *Hooper v. City of Tulsa*, 71 F.4th 1270, 1282 (10th Cir. 2023)). Here, these principles all confirm that Section 12601 does not authorize facial challenges to states' substantive laws. Instead, the statute provides a narrower cause of action focused on specific actors ("law enforcement officers") when the way they perform their duties ("a pattern or practice by") causes a deprivation of rights.

To begin, the plain text of Section 12601 provides the United States with a cause of action targeting harms stemming from specific actors—"law enforcement officers" and "officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles." 34 U.S.C. § 12601(a). The statute's focus on specific actors "is bolstered by the title Congress gave this section"—in this instance, the titling and subtitling the section "State and Local Law Enforcement" and "Police Pattern or Practice," respectively. *See SEC v. Scoville*, 913 F.3d 1204, 1218 (10th Cir. 2019) (citing *Almendaraz-Torres v. United States*, 523 U.S. 224, 234 (1998)). This focus on law enforcement officers is further illustrated by the other provision in that subtitle directing the Attorney General to "acquire data about the use of excessive force by law enforcement officers," and to "publish an annual summary of the data." Pub. L. No. 103-322, § 210402, 108 Stat. at 2071 (now codified as 34 U.S.C. § 12602). Congress' decision to pair the pattern or practice provision with one directing the Attorney General to acquire this data

13

underscores its specific focus on law enforcement officers and the way they perform their duties. *See Adoptive Couple v. Baby Girl*, 570 U.S. 637, 652 (2013) ("[P]rovisions [that] appear adjacent to each other . . . should be read in harmony").

Next, the language "engage in a pattern or practice of conduct by law enforcement officers" demonstrates that Section 12601 addresses *how* officers perform their duties. In the context of Section 12601, to "engage" means "[t]o employ or involve oneself" or "to take part in." *Engage, Black's Law Dictionary* (12th ed. 2024). A "pattern" is "[a] mode of behavior or series of acts that are recognizably consistent," *Pattern, Black's Law Dictionary* (12th ed. 2024), while "practice" similarly denotes "[a]n established custom or prescribed usage." *Practice, Black's Law Dictionary* (12th ed. 2024). "Conduct" refers to "[p]ersonal behavior, whether by action or inaction" or "the manner in which a person behaves; collectively, a person's deeds." *Conduct, Black's Law Dictionary* (12th ed. 2024). These definitions underscore the commonsense understanding that "engage in a pattern or practice of conduct by law enforcement offers" refers to repeated, prescribed, or habitual courses of action by law enforcement. Congress chose to establish a cause of action to address law enforcement officers' own conduct, not the conduct of others, let alone legislative enactments by another branch of government.

Finally, the "pattern or practice of conduct by" law enforcement officers must cause the alleged deprivation of rights. The clause "that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the

14

United States" is a restrictive relative clause that limits the preceding text and meaning of "pattern or practice of conduct by law enforcement officers" such that this pattern of conduct must be the source of the deprivation. *See United States v. Nishiie,* 996 F.3d 1013, 1021–22 (9th Cir. 2021) (noting that "[r]estrictive relative clauses are usually introduced by *that . . .* and are never set off by commas from the rest of the sentence" and that such clauses provide "information that is essential to understanding the intended meaning of the rest of the sentence" (citation omitted)); *see also Fla. Agency for Health Care Admin. v. Adm'r for Ctrs. for Medicare & Medicaid Servs.,* 161 F.4th 765, 782 (11th Cir. 2025) (illustrating how a restrictive relative clause modifies the preceding clause of a statutory sentence under "the ordinary rules of syntax"). Thus, where a different act causes the alleged deprivation—as here, where the legislature enacted the underlying law proscribing individuals' private conduct—then there is no "pattern or practice" by law enforcement officers that falls within the scope of Section 12601.

Nothing in Section 12601's plain text creates a cause of action to challenge substantive criminal prohibitions. Instead, it squarely addresses "conduct by law enforcement officers," which does not include the large-capacity magazine restriction enacted by the General Assembly. At bottom, "[i]f Congress had intended" to authorize DOJ to facially challenge state or local laws, "it easily could have drafted language to that effect." *Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 429 (2022). Congress would not have created such a circuitous path if it

15

wanted to authorize DOJ to facially challenge state or local laws. *Cf. City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 879 (9th Cir. 2009) (distinguishing between a "facial challenge to the statute itself" and a "pattern and practice" claim).

### 2. The history and context confirm Section 12601's narrow focus on redressing systemic police misconduct.

In addition to Section 12601's plain text, its context and history further demonstrate that Section 12601 provides a remedy to address "conduct by law enforcement officers" and does not permit facial challenges to substantive criminal statutes as Plaintiffs seek to bring here. As explained *supra* in Background Section II.A, Section 12601 was designed to address the specific problem of systemic police misconduct. The Committee Report for the Police Accountability Act, Section 12601's precursor, *see supra* at 5–7, clearly emphasized that the Act sought to remedy harm expressly identified multiple times as "pattern[s] of abuse," *i.e.*, patterns of "[p]olice brutality," "police misconduct," and "abuse[s]" of "the authority granted" to officers. H.R. Rep. No. 102-242, at 136, 138. Further, Congress highlighted examples of the "abusive police practices" the Act intended to target, such as "the lack of training or the routine use of deadly techniques like chokeholds, or the absence of a monitoring and disciplinary system." *Id.* at 138.

Congress sought to close what it perceived as a "gap in the law" created by the general lack of authority to criminally prosecute police misconduct and the decision in *Lyons*, 461 U.S. 95, which limited private litigants' ability to seek systemic fixes for police misconduct. *Id.* at 137–39. Congress expressed concern that

16

prior to Section 12601's passage, "courts were powerless to correct" systemic police abuses and "had no authority to order remedies for the glaring deficiencies" described in reports of police abuse across the nation. *Id.* at 139.

Section 12601 was meant to fix that shortfall. "It makes sense to read" Section 12601 "in light of the history of the provision." *Fischer v. United States*, 603 U.S. 480, 491 (2024). *Fischer* is instructive here. There, the Supreme Court reviewed the history of disputed provision of the Sarbanes-Oxley Act and noted that it was enacted "to plug [a] loophole" revealed by the Enron scandal. *Id.* at 492. Examining this text in light of this history, the Court rejected the United States' more expansive reading because "[i]t would be peculiar to conclude that in closing the Enron gap, Congress actually hid away . . . a catchall provision that reaches far beyond the [scandal] that prompted the legislation in the first place." *Id.*

The same analysis applies here, where Congress likewise drafted Section 12601 to close an identified gap in the law that left systemic police misconduct unaddressed, the text should be read as tailored to solving that problem, not as authorizing roving facial challenges to legislative enactments. And in any case, that sort of remedial gap simply does not exist when it comes to substantive criminal prohibitions. Criminal defendants can and do challenge those laws via a motion to dismiss the indictment, among other mechanisms. *See* Motion to Dismiss Under the Second Amendment, *People v. Salas*, 25M2118 (Denver Cnty. Ct. May 11, 2026); Order on Appeal, *People v. Sgaggio*, 23CV296 (El Paso Dist. Ct. Nov. 12, 2024)

17

(affirming denial of motion to dismiss large capacity magazine prosecution under Second Amendment). And individual litigants can bring (and have brought) affirmative facial challenges to these laws under 42 U.S.C. § 1983 and other statutes.

Additionally, noticeably absent from the committee report was any expression of congressional concern about state criminal laws. To the contrary, Congress indicated a concern not about flawed legislative acts, but rather law enforcement "ignor[ing]" state statutes that mandated proper "police training standards," H.R. Rep. No. 102-242, at 139, along with troubling instances of police misconduct, *id.* at 138. Authorizing DOJ to facially challenge state and local laws would represent a significant change in the carefully constructed federalism balance; if Congress had intended to do so, surely it would have mentioned that somewhere in the legislative history, if not the text. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 380 (1988) ("[I]t is most improbable that [a major change] would have been made without even any mention in the legislative history."); *cf. Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear." (citation modified)).

18

In sum, nothing in the relevant history suggests that Congress designed Section 12601 to authorize challenges to state or local criminal statutes and make Section 12601 the Justice Department's own Section 1983.

### 3.  For more than 30 years, the United States did not use Section 12601 to launch facial challenges.

Further, the present suit is completely unprecedented and out of step with past practice. "A longstanding 'want of assertion of power by those who presumably would be alert to exercise it' may provide some clue that the power was never conferred." *Biden v. Nebraska*, 600 U.S. 477, 519 (2023) (Barret, J., concurring) (quoting *FTC v. Bunte Brothers, Inc.*, 312 U.S. 349, 352 (1941)); *see also Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 643 (2026) ("The fact that no President has ever found such power in [the statute] is strong evidence that it does not exist."); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("The longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." (citation modified)).

Section 12601 has historically been used only to remedy unlawful conduct by law enforcement. A review of suits brought under Section 12601 confirm this; for example, previous suits included challenges to patterns or practices of "unlawful stops, searches and arrests," "discriminatory policing," "excessive force, including deadly force," "theft by officers," "unlawful retaliation against people who make complaints or criticize [the police department]," and "violations of the First

19

Amendment right to observe and record police activity." *See* 2017 Rep. at 41–48 (summarizing the United States' pattern or practice cases through 2017).

Only in the last few months under the newly created Second Amendment Section has the United States initiated Section 12601 claims to challenge laws. If Section 12601 did grant the United States broad authority to challenge state and local laws that it opposes, presumably the United States would have invoked it for that purpose previously. That the United States did not believe it had such power for the past three decades is strong evidence that this unheralded power does not exist. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power . . . we typically greet its announcement with a measure of skepticism.").

### B. The Complaint brings a facial challenge that Section 12601 does not permit.

The United States upends its long-held application of Section 12601, however, and its Complaint fails to state a claim because it attempts to facially challenge criminal laws enacted by the General Assembly. Section 12601 does not provide such a cause of action. Plaintiff's true target is not law enforcement conduct, but rather "a criminal law of the State" prohibiting the sale, transfer, or possession of "a large-capacity magazine." Compl. ¶¶ 14, 50 (citing Colo. Rev. Stat. § 18-12-302(1)(a)). It is this criminal statute—enacted by the General Assembly, not Defendants—which the Complaint alleges "violates the Second Amendment." *Id.* ¶ 42; *see also id.* ¶¶ 50, 6.

20

The Complaint attempts to cast its facial challenge as a valid Section 12601 claim by broadly alleging that Colorado law enforcement officers make arrests when individuals violate criminal laws, including the large-capacity magazine restriction. And because Plaintiff believes that the large-capacity magazine restriction is unconstitutional (despite it being repeatedly upheld, see *supra* at pp. 3–4), *id.* ¶ 42, it reasons that any enforcement of the law is "a pattern or practice of conduct" in violation of Section 12601. *Id.* ¶ 58. This does not suffice to state a viable claim.

The United States' allegation amounts to nothing more than the assertion that Defendants enforce criminal prohibitions. They "have the power to make arrests for violation of *any* criminal law of the State," and are instructed "to make arrests when a valid warrant for arrest issues." *Id.* ¶ 45. Absent from the Complaint, however, are any allegations about *how* Defendants enforce the law or otherwise specifying the conduct that violates Section 12601. If basic policing duties to enforce criminal laws were sufficient to enable a facial challenge to a state or local law under Section 12601, the United States could use the statute to challenge any law it opposes. Section 12601 does not grant such roving authority.

More fundamentally, the Complaint cannot avoid the reality that Defendants' general duties to enforce criminal laws does not create the "depriv[ation]" of constitutional rights alleged. *Id.* ¶ 58. Again, Section 12601 only prohibits patterns or practices of "conduct by" law enforcement officers "that deprives persons of constitutional or statutory rights." But there is no such conduct alleged here.

Instead, the alleged deprivation Plaintiff challenges stems from a substantive criminal law enacted by Colorado's General Assembly. It is that law, not Defendants' conduct, that limits an individual's right to "sell[], transfer[], or possess[] a large-capacity magazine," which Plaintiff alleges violates the Second Amendment. *Id.* ¶¶ 42, 63. The Complaint itself recognizes that Colorado law enforcement officers "are under a duty to enforce the criminal laws of the State," which are promulgated by the General Assembly. *Id.* ¶ 49. Simply put, Defendants' conduct is not responsible for the alleged constitutional harm.

Finally, the United States' requested relief underscores that the Complaint is a facial challenge to a criminal law not cognizable under Section 12601. It seeks a permanent injunction "enjoining Defendants and their agents from enforcing the Magazine Ban." Compl., Prayer ¶ B. This is not a request to proscribe specific patterns or practice of conduct by law enforcement officers, but rather an ask to partially nullify a statute by barring its enforcement by Defendants. Section 12601 was not designed to offer such striking relief and does not permit the type of facial challenges the United States attempts to smuggle in here.

## II.    The Complaint fails to allege a pattern or practice by law enforcement officers.

Even if the United States' claim were cognizable under Section 12601, the Complaint fails to allege sufficient facts to support that the CSP and CBI are in fact engaging in a pattern or practice of conduct. The Complaint cites portions of Colorado law and concludes that officers of the two agencies "are under a duty to

22

enforce the criminal laws of the State." Compl. ¶¶ 49–51. The Complaint then offers a conclusory assertion, with no factual support, that officers of the two agencies "routinely enforced [Colorado's large-capacity magazine restriction] from 2013 to the present . . . and will continue to do so in the future unless enjoined." *Id.* ¶ 52.

The Court cannot reasonably infer a "pattern or practice of conduct" from the mere existence of a criminal statute. *See, e.g.*, Compl. ¶ 58. That the United States rushed to file this lawsuit without first conducting an investigation might explain the absence of any factual allegations. But that explanation is not an excuse—and does not relieve the United States of its obligation to plead plausible facts from which this Court could find a pattern and practice of conduct by law enforcement officers. Because the Complaint fails to do so, the Court must dismiss it.

## III.    The alleged constitutional violation cannot be redressed by this suit.

The United States' claim also fails because its alleged injury is not redressable by this suit. This jurisdictional flaw is directly tied to DOJ's misuse of its pattern and practice authority and independently merits dismissal under Rule 12(b)(1). DOJ seeks to bring a facial challenge to Colorado's large-capacity magazine restriction to enjoin any enforcement or prosecution of the challenge statute. Because DOJ lacks authority to do so, it has sued two random law enforcement agencies for "pattern or practice" conduct. But an injunction against these two random agencies would provide no real-world relief because it will not limit any enforcement or prosecution of this Colorado law. Regardless of the outcome,

Colorado district attorneys will continue to be permitted to prosecute every single violation of this statute with the assistance of all local law enforcement. Thus, not only is the Section 12601 claim not cognizable, there is no relief that can be provided that would redress the alleged injury. Accordingly, for this additional reason, the Court should dismiss the Complaint for lack of jurisdiction.

Federal courts are courts of limited jurisdiction. A federal district court is not a roving beacon of justice, free to opine on each question any party presents, no matter how consequential. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378–82 (2024). The Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. To satisfy Article III's justiciability requirements, a plaintiff must have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff "bears the burden of establishing standing as of the time [they] brought the lawsuit and maintaining it thereafter." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation modified).

To establish standing, a plaintiff must prove: (1) they "ha[ve] suffered or likely will suffer an injury in fact," (2) "the injury likely was caused or will be caused by the defendant," and (3) "the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. To satisfy its burden as to redressability a plaintiff must "demonstrate a substantial likelihood that the relief requested will redress its injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). "A showing that the relief requested *might*

24

redress the plaintiff's injuries is generally insufficient" to satisfy the redressability requirement. *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023); *see also Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring) ("Redressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power."). To determine whether an injury is redressable, courts consider "the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation omitted).

> ### A. The United States' claim is not redressable because it will not prevent enforcement of the statute.

To determine if the United States alleges a redressable injury, this Court must consider "the relationship between the judicial relief requested and the injury suffered." *California*, 593 U.S. at 671. Here, the United States asserts that Coloradans are injured through enforcement of the large-capacity magazine restriction, Compl. ¶¶ 6, 62–63, and that "the United States brings this action to vindicate the rights of Colorado citizens," *Id.* at ¶ 6. Yet the requested relief will not redress the injury the United States alleges. Should the court provide the United States the complete relief it seeks, it will only apply to two random law enforcement agencies (CSP and CBI). It will not stop any enforcement of this criminal statute,

which is enforced like all criminal laws by prosecutors bringing criminal charges in court against offenders.

Granting the United States' requested relief would do absolutely nothing to impact prosecutions of the large-capacity magazine restriction. The responsibility to prosecute falls squarely to Colorado's district attorneys, locally elected officials under article VI, section 13 of the Colorado Constitution. *See also People v. Dist. Ct.*, 632 P.2d 1022, 1024 (Colo. 1981) (recognizing that district attorneys have the power "to determine who shall be prosecuted and what crimes shall be charged"). Any relief against CSP and CBI would have no impact against Colorado's district attorneys, elected officials who could continue to prosecute every violation of the law. *Haaland*, 599 U.S. at 293 (recognizing an injury is not redressable where it would not give "legally enforceable protection" from other officials who enforce and are "not parties to the suit" and would not be "obliged to honor" any legal determination). Rather than "vindicating the rights of Coloradans," the relief requested by the United States would leave intact Colorado's large-capacity magazine restriction, permitting continued enforcement and prosecution. *Cf. We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1259 (10th Cir. 2024) (holding that plaintiffs lacked standing on redressability grounds to challenge a state statute when there were independent city and county regulations that were not challenged).

Likewise, the myriad of local law enforcement agencies, such as police departments and sheriff's offices throughout Colorado, would remain free to

continue investigating and assisting the district attorneys with enforcing the statute. Again, far from "vindicating the rights of Colorado citizens," any relief would be limited to two random law enforcement agencies, which would not prevent the enforcement of the challenged law.

For identical reasons, a declaratory judgment would have no real-world impact because it would not bind any district attorneys or local law enforcement agencies and would thus not prevent any prosecution or enforcement of the challenge statute. Instead, it would serve only as an advisory opinion, providing little more than persuasive authority regarding the constitutionality of the statute. But such authority cannot solve the United States' redressability problem. *Haaland*, 599 U.S. at 294; *see also People v. Barber*, 799 P.2d 936, 939–40 (Colo. 1990) (holding that decisions of lower federal courts "are not conclusive on state courts, even on questions of federal law"). That is not enough for the United States to meet its burden to establish a redressable injury and standing, and this Court should dismiss this lawsuit under Rule 12(b)(1).

Nor is this outcome surprising given the limited authority granted to DOJ under Section 12601. To the contrary, it is entirely the byproduct of DOJ lacking authority to bring facial challenge against state laws. Instead, its authority is directly tailored towards correcting law enforcement pattern or practice misconduct. That is why DOJ has been forced here to direct its claim against two random law enforcement agencies, notwithstanding that its actual objection is with a statute

27

enacted by the General Assembly. But because of the limited available relief,

tailored to correct specific pattern or practice conduct by law enforcement officers,

Section 12601 does not allow relief that would remedy the injury alleged.

**B.    The United States will never be able to establish
redressability because Section 12601 does not afford relief
against prosecutors for their independent prosecutorial
decisions.**

While hypothetically the United States might bring untold other Section

12601 lawsuits against Colorado's 64 counties and their sheriffs, or perhaps seek to

join to this suit the approximately 240 distinct law enforcement agencies within the

State, the United States cannot use Section 12601 litigation to compel Colorado's

district attorneys because Section 12601 does not and cannot reach their

independent prosecutorial decisions. So long as those district attorneys may—and

will—continue to prosecute violators of the law, the purported harm to Coloradans

cannot be redressed by this spurious Section 12601 lawsuit.

As set forth above, Section 12601 targets harm stemming from specific actors,

and excludes any reference to prosecutors or other courtroom practitioners. "If

Congress had intended" for Section 12601 to cover prosecutorial decisions by

prosecutors, "it easily could have drafted language to that effect." *Marstiller*, 596

U.S. at 429 (citation omitted). Instead, the statute is limited to "law enforcement

officers," a term commonly understood as synonymous with police. While Section

12601 does not define "law enforcement officer," a separate provision of Title 34

defines "State or local law enforcement officer," and prosecutors would not qualify

28

because they do not "make arrests or apprehensions," nor are they ordinarily

authorized "to carry firearms." 34 U.S.C. § 50301(11). Nothing in the text of Section

12601, also codified within Title 34, would warrant a more expansive meaning here.

Indeed, Congress codified this provision under the title "Police Pattern or Practice,"

providing further evidence of its limited scope. *See Scoville*, 913 F.3d at 1218.

Likewise, the Committee Report for the Police Accountability Act shows that

Congress intended to create a cause of action to allow DOJ to address "patterns or

practices of *police* misconduct," H.R. Rep. No. 102-242 at 137 (emphasis added), and

the report contains no mention of prosecutors, further revealing that Congress did

not extend Section 12601 beyond the common understanding of "law enforcement."

*See United Sav. Ass'n of Tex.*, 484 U.S. at 380.

Notably, the Fifth Circuit rejected DOJ's prior attempt to extend Section

12601 to courtroom practitioners. There, the court looked to the plain text of

§ 12601 and the context of the 1994 Crime Bill to reject the government's argument

that Section 12601 extended to Youth Court judges. *United States v. Lauderdale

Cnty.*, 914 F.3d 960, 964–966 (5th Cir. 2019).[4]

In sum, the text of Section 12601, combined with precedent, practice, and

commonsense, lead to an inexorable conclusion: the United States cannot use the

statute to obtain injunctive relief against prosecutors for their independent

---

[4] Defendants understand that DOJ has twice before asserted that Section 12601
could apply to prosecutors, but that no court has sanctioned that interpretation.

29

prosecutorial decisions. As a result, the United States will never be able to establish

redressability because it cannot obtain relief to enjoin prosecutors from charging

violations of the law.

## IV.    The United States cannot cure the Complaint's deficiencies and the Court should dismiss without leave to amend.

Generally, leave to amend should be freely granted when justice requires, but

amendment may be denied when futile. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d

1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as

amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218

(10th Cir. 1999). Here, the United States raises a single claim under Section 12601.

For the reasons outlined herein, the Court should dismiss that claim because

Section 12601 cannot be used to launch a facial challenge to Colorado's laws and the

harm the United States alleges cannot be redressed in this lawsuit. The United

States cannot expand the limited authority Congress provided it through

amendment to the pleadings in this case. For that reason, any amendment would be

futile. The Court should dismiss the Complaint without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with

prejudice.

30

Dated: June 30, 2026           Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*
Peter Baumann, *Senior Assistant Attorney General*
Gabe Podesta, *Senior Assistant Attorney General*
Sam Wolter, *Assistant Attorney General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

*Counsel for the State of Colorado and the Department of Public Safety*

31

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*