## IN THE UNITED STATES STATE COURT
## FOR THE STATE OF COLORADO

**Civil Action No. 26-cv-01950-SKC-TPO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARTMENT OF PUBLIC SAFETY,

      Defendants.

---

## RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

---

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    I.     Defendants' Procedural Error Bars Granting Their Motion. ................................. 2

    II.    Defendants Concede Two of the Three Elements of Plaintiff's Section 12601
Claim. ...................................................................................................................... 3

        1. Governmental Authority. ........................................................................... 4

        2. Second Amendment Violation. .................................................................. 4

    III.    Plaintiff Has Plausibly Pled That the CO LEOs Have Engaged in a Pattern or
Practice of Misconduct. ........................................................................................... 5

    IV.    The Plain Text of Section 12601 Authorizes the Relief That Plaintiff Seeks. ... 8

    V.    Statutory Interpretation Leads to the Same Conclusion as The Plain Text
Analysis.................................................................................................................. 12

        A.   The Legislative History of the 1991 Bill Supports Plaintiff's Claim. .............. 12

        B.   Section 12601 and Section 1983 Should Be Interpreted *In Pari Materia*. ....... 14

    VI.    Defendants' Arguments That Section 12601 Does Not Apply Are Meritless.. 16

        A.   No Authority Supports Defendants' Interpretation of Section 12601. ............. 16

        B.   Enforcement of an Unconstitutional Law Incurs Section 12601 Liability. ...... 16

        C.   Defendants' Extratextual Criterion Frustrates the Statute's Remedial Purpose 19

        D.   The Department's Past Practice Does Not Cabin the Scope of the Statute. ..... 20

        E.   The United States Is Not Asserting that It Has "New" Power .......................... 23

        F.   The Scope of a Statute Is Not Constrained by the Limits of the Drafters'
Imagination; Nor Is the Statute Limited to Addressing the "Principal Evil" with
which They Were Concerned.................................................................................... 24

        G.   Legislative History Is Not the Law .................................................................. 25

        H.   Congress Could Have Easily Drafted a Narrow Statute .................................. 27

    VII.    The United States Sovereign Interests Support the Complaint.......................... 27

    VIII.    Defendants' Argument That the United States Lacks Standing Is Meritless.... 28

CONCLUSION ........................................................................................................ 30

## INTRODUCTION

This is a straightforward case. Millions of American own hundreds of millions of firearm magazines with a capacity greater than 15 rounds. Compl. 6. These magazines are in common use for lawful purposes by law-abiding Americans and are therefore protected by the Second Amendment. *Assn of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 2026 WL 2075513, at *25 (3d Cir. July 17, 2026) (*ANJRPC*), (citing *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008)). Pursuant to Colo. Rev. Stat. § 18-12-302 (Magazine Ban), the State of Colorado (State) prohibits its citizens from possessing these constitutionally protected arms. The Magazine Ban is, therefore, unconstitutional.

The Complaint validly challenges this law enforcement misconduct through a properly pled 34 U.S.C. § 12601 (Section 12601) claim. Section 12601 makes it unlawful for the State's law enforcement officers to engage in a pattern or practice of conduct that deprives persons of rights protected by the Constitution. Compl. ¶ 53. The Colorado State Patrol (State Patrol) and the Colorado Bureau of Investigation (CBI) are statewide law enforcement agencies within the Colorado Department of Public Safety (DPS). Compl. ¶ 9. State Patrol and CBI law enforcement officers (collectively, "CO LEOs") routinely enforce the Magazine Ban. Compl. ¶ 52. That conduct deprives citizens of the State of their Second Amendment right to keep and bear constitutionally protected arms. Compl. ¶ 58. Therefore, that conduct is unlawful under Section 12601, and the Department of Justice (Department) may seek to enjoin it. *See* 34 U.S.C. § 12601(b). Compl. ¶¶ 53-60.

Defendants assert that Section 12601 cannot reach their misconduct because the CO LEOs are merely following the State's criminal statute. However, Defendants' just-following-orders argument does not inoculate their unconstitutional conduct from Section 12601 liability. Defendants' reliance on a criminal statute authorizing—indeed imposing—unconstitutional

misconduct by law enforcement is no more convincing than Reconstruction Era states asserting a right to continue to violate federal civil rights based on their own state-level restrictions.  Just as Congress passed the Klan Act to equip private individuals to protect their civil rights in that era, so too did Congress equip the Department to protect against systemic law enforcement misconduct in the modern era.  No court rationally can condone the use of law enforcement officers as a tool to systematically impose civil rights violations, even if a State legislatively mandates such law enforcement misconduct.

## ARGUMENT

This Court should protect civil rights and the United States' sovereign authority to defend society from all variety of law enforcement misconduct by denying Defendants' Motion to Dismiss because:  (1) Defendants' procedural errors bar granting their motion; (2) Defendants concede two of the three elements of Plaintiff's Section 12601 claim (3) Plaintiff has plausibly pled that the CO LEOs have engaged in a pattern or practice of misconduct (4) the plain text of Section 12601 authorizes the relief that Plaintiff seeks; (5) the rules of statutory interpretation lead to the same conclusion as the plain text analysis (i.e., that Plaintiff's claim is properly pled); (6) Defendants' arguments that Section 12601 does not apply are meritless; (7) the United States' sovereign interests support the Complaint; and (8) Defendants' argument that the United States lacks standing is meritless.  Accordingly, this Court should deny Defendants' motion.

## I.    Defendants' Procedural Error Bars Granting Their Motion.

Defendants attached voluminous materials to their motion and requested the Court to consider facts asserted in those materials.  Def. Mot. 7-9, Exs. A-C.  However, as the Supreme Court reaffirmed earlier this year, a "court *cannot consider* matters outside the pleadings" when ruling on a Rule 12(b)(6) motion.  *Berk v. Choy*, 607 U.S. 187, 193 (2026) (emphasis added; citation and internal quotation marks omitted).  "Importantly, in assessing whether a plaintiff has

2

stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (citation omitted).  Accordingly, the Court must disregard the extraneous materials Defendants submitted and their arguments based upon those materials.

Defendants submitted their extraneous materials as evidence that they believe proves the Department's past Section 12601 enforcement actions were narrowly focused.  As noted, the Court should disregard those materials.  However, if the Court reviews them, the Court should know that, as set forth below, the Defendants' characterization of past agency practice is inaccurate.  Thus, even if the Court decides to take notice of Defendants' documents, it cannot take notice of the underlying "fact" Defendants are trying to prove, i.e., that all of the Departments' enforcement actions were as narrowly focused as Defendants suggest.  As the Supreme Court has noted, in a constitutional case where facts are disputed, courts should not "decide the legal questions posed by the parties without a more thoroughly developed record . . . in which the parties have an opportunity to prove those disputed factual assertions upon which they rely." *City of Los Angeles v. Preferred Commc'ns, Inc*., 476 U.S. 488, 494 (1986).  Because this factual dispute is inappropriate at this pleading stage of the litigation, this Court should deny the motion.

## II.      Defendants Concede Two of the Three Elements of Plaintiff's Section 12601 Claim.

The United States brought this action pursuant to the statutory authority set forth in Section 12601.  Compl. ¶ 47.  Section 12601(a) states in pertinent part:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

3

Thus, to state a claim under Section 12601, the Complaint must plausibly allege three elements: (1) a "governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority;" (2) "engage[d] in a pattern or practice of conduct by law enforcement officers;" and (3) that conduct operated to "deprive[] persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

Defendants' Federal Rule of Civil Procedure 12(b)(6) motion (Sections I and II of Defendants' Argument) is based on their contention that (1) Section 12601 does not authorize the United States to bring its claim (Def. Mot. 11-22), and (2) the Complaint does not plausibly allege that the CO LEOs routinely enforce the law (Def. Mot. 22-23). Plaintiff will address these contentions below. Before addressing those contentions, however, Plaintiff notes that Defendants have conceded two of the three elements of Plaintiff's Section 12601 claim.

1.    **Governmental Authority.**    The Complaint alleges that Colorado and DPS are governmental authorities, as that term is used in Section 12601. Compl. ¶¶ 54-55. Defendants do not dispute these allegations.

2. **Second Amendment Violation.**    Last month, in *Wolford v. Lopez*, the Supreme Court summarized the two-part "*Bruen* test"[1] required in a Second Amendment case. 2026 WL 1825723, *6 (U.S. June 25, 2026). At step one of the *Bruen* test, "a court must determine whether the law before it clashes with the 'plain text'" of the Second Amendment. *Id*. (citation omitted). As relevant here, Plaintiff meets its step-one burden simply be plausibly alleging that the Magazine Ban concerns "any form of "Arms" and the Magazine Ban places a restriction on possessing it. *See ANJRPC*, at *22 (holding that all magazines are arms under *Bruen* step one). Plaintiff has plausibly pled all elements of a substantive violation of the Second Amendment. Compl. ¶¶ 20-

---

[1] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022).

4

42. Defendants do not dispute this.  Nor could they, because most of the allegations supporting the claim are based on Defendants' own admissions.  *See* Compl. ¶¶ 25-39 (allegations based on State's admissions).  Defendants chose not to engage the Second Amendment issue at this stage of the litigation.[2]

## III.   Plaintiff Has Plausibly Pled That the CO LEOs Have Engaged in a Pattern or Practice of Misconduct.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At the pleading stage, a plaintiff does not need to state facts to establish a *prima facie* case of a pattern or practice.  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019).  Thus, to overcome a motion to dismiss in a pattern-or-practice case, the allegations need only create a reasonable inference that a pattern or practice exists.  *See, e.g.*, *United States v.*

---

[2] Defendants cite a case that was resolved on standing grounds, *Colo. Outfitter Ass'n v. Hickenlooper*, 823 F.3d 537, 549–551 (10th Cir. 2016), and a case that was voluntarily dismissed by the plaintiffs, *Gates v. Polis*, Case No. 22-cv-01866-GPG (D. Colo.), and some state court cases dealing with magazines.  Mot. at 3-4.  They do not cite any case holding that magazines are not protected by the Second Amendment.  They do not argue, even in a cursory fashion, that magazines are not constitutionally protected.  Even if Defendants had not conceded the constitutional question, at this stage of the litigation, for purposes of determining the merits of Defendant' argument regarding the scope of Section 12601, the Court would need to assume the merits of Plaintiff's assertion that the Magazine Ban violates the Constitution.  Whether a party can assert a claim in the first place must not be confused with the court's assessment of whether the party will ultimately succeed on the merits.  *Cf. Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (The merits of a claim are independent of whether a plaintiff may bring the claim in the first place.).

5

*Prashad*, 437 F. Supp. 3d 105, 108-09 (D. Mass. 2020); *EEOC v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1085 (D. Haw. 2012); *United States v. Nobel Learning Communities, Inc.*, 676 F. Supp. 2d 379, 384 (E.D. Pa. 2009).  Whether a pattern or practice exists is ordinarily a factual question for the jury and "each case must stand on its own facts."  *United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1992).

A complaint that plausibly asserts facts supporting a plaintiff's claims, "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable."  *Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556).  "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery . . .."  *Berk*, 607 U.S. at 194.  The Supreme Court has "consistently rejected" efforts to require more.  *Id*.  Accordingly, Defendants' attempt to require more than the pleading standards is improper and must fail.

Defendants make a cursory argument that Plaintiff has not plausibly pled that the CO LEOs engage in a pattern or practice of enforcing the Arms Ban.  Def. Mot. 22-23.  This argument is meritless.  The Complaint alleges that all officers of the State Patrol have the power to make arrests for violation of any criminal law of the State.  Compl. ¶ 45 (citing Colo. Rev. Stat. § 24-33.5-213(1)(a)(I)).  And, the Complaint alleges that all officers of the State Patrol are commanded to make arrests when a valid warrant for arrest issues.  *Id*.  CBI agents perform duties in the enforcement of the criminal laws of the State.  Compl. ¶ 46.  They are vested with the powers of peace officers of the State and have all the powers of any sheriff or police or other peace officer. *Id*. (citing Colo. Rev. Stat. § 24-33.5-409).  Pursuant to Colo. Rev. Stat. § 16-3-108, when a court issues an arrest warrant in connection with an alleged violation of the Magazine Ban, it commands the CO LEOs involved to arrest the person named in the warrant "and to take the person without unnecessary delay before the nearest judge of a court of record."  Compl. ¶ 48.  The CO LEOs are

under a duty to enforce the criminal laws of the State.  Compl. ¶ 49.  The Magazine Ban is a criminal law of the State.  Compl. ¶ 50.  Thus, the CO LEOs are under a duty to enforce the Magazine Ban.  Compl. ¶ 51.  And the CO LEOs have, in fact, routinely enforced the Magazine Ban from 2013 to the present time and will continue to do so in the future unless enjoined.  Compl. ¶ 52.  This is a valid *prima facie* allegation of Defendants' law enforcement misconduct.

Defendants can hardly assert that it is not plausible that their law enforcement officers enforce the laws of the State of Colorado.  The thrust of Defendants' argument is that Plaintiff has not set forth granular detail about the CO LEOs' enforcement efforts.  Def. Mot. 23.  Defendants misapply *Twombly*.  Plaintiff is not required to "set out *in detail* the facts upon which [it] bases [its] claim." *Id*. at 555 n.3. (citation and internal quotation marks omitted).  The factual allegations need only "be enough to raise a right to relief above the speculative level." *Id*. at 555.  There is no requirement of "heightened fact pleading of specifics." *Id*. at 570.

Do Plaintiff's allegations that the CO LEOs are bound by law to enforce the Magazine Ban and have in fact routinely done so rise "above the speculative level?"  To ask the question is to answer it.  It is eminently plausible that Colorado's law enforcement officers fulfil their duty to enforce its criminal laws, including the Magazine Ban.[3]  The CO LEOs' statutory obligation to enforce the State's criminal laws, standing alone, is sufficient to create a "reasonable inference" that the CO LEOs routinely enforce the statute. *See Iqbal*, 556 U.S. at 678 ("reasonable inference" is all that is required).  Defendants have conceded the "government authority" and "constitutional violation" elements of Plaintiff's claim, and Plaintiff has plausibly pled the "pattern or practice"

---

[3] Moreover, Defendants have had plenty of opportunity to disavow enforcement of the Magazine Ban and have not done so.  In such cases, enforcement of the statute is presumed. *See Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 393 (1988). Defendants have not disavowed enforcement because they have been enforcing the Magazine Ban and will continue to do so.

element.  Therefore, the motion to dismiss should be denied, and the Court should give Plaintiff an opportunity to develop a factual record.  *See F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1194 (D. Colo. 2025) (citation and internal quotation marks omitted) (holding that a fact issue is properly resolved through discovery, not at the motion to dismiss stage.)  *See also City of Los Angeles v. Preferred Commc'ns, Inc.*, 476 U.S. 488, 494 (1986) (in a constitutional case, a party should have opportunity to develop factual record).

**IV.     The Plain Text of Section 12601 Authorizes the Relief That Plaintiff Seeks.**

Defendants' Rule 12(b)(6) motion is mainly based on their contention that the statutory text of Section 12601 does not authorize the United States to seek an injunction against enforcement of the Magazine Ban.  Defendants are wrong.  Section 12601 plainly authorizes the relief Plaintiff seeks against Defendants.

The "cardinal canon" of statutory interpretation is that a "legislature says in a statute what it means and means in a statute what it says there" regardless of whether "*legislative history points to a different result.*"  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (emphasis added).  Accordingly, when the words of a statute are unambiguous, this first canon is also the last and the "judicial inquiry is complete."  *Id.* at 254 (citations and internal quotation marks omitted); *see also Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (internal citations omitted) (a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself, and where that examination yields a clear answer, judges must stop); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)) (when interpreting a statute, the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case and, if so, the inquiry ceases).  Thus, the best evidence of the purpose of a statute is the

8

statutory text itself. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991). "Where [statutory text] contains a phrase that is unambiguous . . . [courts] do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process." *Id*. at 98-99.

The dispute, here, concerns the scope of law enforcement misconduct prohibited by the statute. The plain text of the statute manifestly prohibits *all* law enforcement conduct that deprives people of their constitutional rights. Defendants argue that the statute prohibits only *some* law enforcement conduct that deprives people of their rights. Defendants are wrong. The statute is simple and unambiguous, and its broad remedial scope is inescapable to any reasonable reader. The plain text authorizes the United States to seek an injunction when law enforcement officers "engage in a pattern or practice of conduct" that operates to deprive persons of their constitutional rights. Enforcing an unconstitutional law obviously deprives persons of their constitutional rights. Therefore, the statute authorizes the United States to seek to enjoin such conduct.

An analogy is helpful to demonstrate law enforcement misconduct stemming from enforcement of an unconstitutional statute. Suppose the State passed a law making it illegal to make "grossly offensive" Facebook posts that tend to stir up hatred. As patently offensive as such posts might be, such a law clearly violates the First Amendment. Now, suppose CO LEOs go to a man's home and arrest him for posting on Facebook that "Belgians are bad people and should not be allowed in the country." In that scenario, the CO LEOs engaged in certain conduct (i.e., arresting a man because he made offensive Facebook posts), and that conduct thus deprived the man of his First Amendment rights. If the CO LEOs engaged in a pattern or practice of such conduct, the United States would be authorized to seek relief under Section 12601.

9

Contrary to Defendants' reading of Section 12601, enforcement of an unconstitutional restraint on a protected right is precisely "conduct" within Section 12601's plain meaning.  The text of the statute proscribes law enforcement officers from engaging in "a pattern or practice of *conduct*" that deprives persons of their constitutional rights.  The most common sense of the word "conduct" is "personal behavior."  *The Random House Dictionary of the English Language*, 2nd ed., unabridged (New York: Random House, 1987);[4] *Conduct*, Black's Law Dictionary (12th ed. 2024) ("[p]ersonal behavior . . ..").  Thus, "Conduct" means "personal behavior, whether by action or inaction and is a term that transcends the legal context."  *United States v. Jordan*, 509 F.3d 191, 196 (4th Cir. 2007) (citation and quotation marks omitted).

It follows that "to engage in a pattern or practice of conduct by law enforcement officers" means simply to engage in a pattern or practice of personal behavior by law enforcement officers.  And a violation of Section 12601 occurs if that behavior results in the deprivation of persons' constitutional rights.  This is a straightforward conclusion drawn from unambiguous text.

Astoundingly, Defendants agree.  They state that the definitions of the words used in the text "underscore the commonsense understanding that 'engage in a pattern or practice of conduct by law enforcement offers' refers to repeated, prescribed, or habitual *courses of action by law enforcement*."  Def. Mot. 14 (emphasis added).  That is exactly correct.  Defendants then state that "the 'pattern or practice of conduct by' law enforcement officers must cause the alleged deprivation of rights. . . . [T]his pattern of conduct *must be the source of the deprivation*."  Def. Mot. 14-15 (emphasis added).  That, too, is right.

---

[4] This is the first sense given in the definition, and the most frequently encountered meaning comes before a less common one.  *See id*., "III. Definitions, Sense Division, Order" in the instructions for use of the dictionary.

Thus, according to Defendants, Section 12601 makes it unlawful for law enforcement officers to (1) engage in "repeated, prescribed, or habitual course[] of action" that (2) is "the source of the deprivation" of rights. Precisely. Consider how Defendants' interpretation of the text would apply in the above hypothetical about the deprivation of First Amendment rights. The statute would apply because CO LEOs would have engaged in a "repeated, prescribed, or habitual course[] of action" that (2) is "the source of the deprivation" of First Amendment rights when they enforce Colorado's hypothetical law banning offensive Facebook posts.

Now substitute "Second Amendment" for "First Amendment." The statute would apply because CO LEOs would have engaged in a "repeated, prescribed, or habitual course[] of action" that (2) is "the source of the deprivation" of Second Amendment rights when they enforce Colorado's unconstitutional Magazine Ban. Defendants have given away the store.

Defendants' own parsing of the plain text leads to the conclusion that Section 12601 is applicable. This leads to the question of why Defendants would nevertheless argue that the text compels the opposite conclusion. Def. Mot. 15. Defendants' conclusions do not follow from their own analysis of the text. This non sequitur is puzzling until one realizes that Defendants' do not want the Court to enforce the plain text at all. Instead, their analysis of the text amounts to nothing less than requesting the Court to rewrite the statute. Defendants want the Court to narrow the scope of the statute. They argue the statute should not apply to law enforcement "conduct" generally but only to a certain kind of law enforcement conduct which they call "abusive police practices." *See* Def. Mot. 16 (arguing that the statute proscribes only "abusive police practices"). Defendants thus want the Court to edit the statute so that it applies only to law enforcement officers who have "engage[d] in a pattern or practice of ~~conduct~~ abusive police practices" that deprive persons of their constitutional rights.

11

Defendants are wrong for two reasons. First, even if their edit were valid—it is not—abusive police practices would still fairly capture CO LEO's unconstitutional implementation of the Magazine Ban. Secondly, the Court has no authority to edit the statute. Defendants' argument amounts to this: Congress intended to confer a very narrow grant of remedial authority on the Department, but in a fit of inattentive drafting Congress accidentally conferred a very broad grant. Therefore, Defendants assert that this Court should fix Congress's mistake. But a court is "not at liberty to rewrite [a] statute to reflect a meaning [it] deem[s] more desirable." *Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1220 (10th Cir. 2018) (citation and internal quotation marks omitted). *See United States v. Monsanto*, 491 U.S. 600, 611 (1989) (the interpretative canons are not "a license for the judiciary to rewrite language enacted by the legislature") (citation omitted). Therefore, the Court should decline Defendants' request.

## V.    Statutory Interpretation Leads to the Same Conclusion as The Plain Text Analysis.

As noted, the "cardinal canon" of statutory interpretation is that if a statute is unambiguous, the plain text controls and the judicial inquiry ends. *Barnhart*, 534 U.S. at 450. The unambiguous text of Section 12601 supports the conclusion that the statute authorizes the United States to seek injunctive relief in this case. Accordingly, the judicial inquiry into the meaning of the statute should end. Even if the text were ambiguous, though, the other rules of statutory construction overwhelmingly support the same conclusion.

## A.    The Legislative History of the 1991 Bill Supports Plaintiff's Claim.

In 1994, Congress passed Section 12601 as part of the Violent Crime Control and Law Enforcement Act of 1994, 108 Stat 1796 (Crime Act). Congress did not hold hearings on the provision of the Crime Act that became Section 12601. Thus, the statute does not have any legislative history. Section 12601 is, however, similar to a provision of H.R. 3371, a failed bill

12

that would have enacted a statute called the Omnibus Crime Control Act of 1991 (1991 Bill). *United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *3 (S.D. Ohio 2000). Significantly, the legislative history of the 1991 Bill states: "The standards of conduct under the Act *are the same as those under the Constitution*, presently enforced in damage actions under section 1983." H.R. Rep. No. 102–242, 102nd Cong., 1st Sess. at 138 (emphasis added) (Committee Report). Thus, the legislative history expressly states that Congress intended the text of the law to create an extremely broad remedy for the United States to redress violations of any constitutional right similar to the broad remedy available to private litigants under Section 1983.[5]

The Committee Report refers to *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980), and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). But Defendants' reliance on that discussion is puzzling because the report states those cases are problems to be solved, not examples to be followed. The Committee Report stated that *City of Philadelphia* limited the Attorney General's authority to seek injunctive relief to remedy constitutional violations, and *Lyons* limited private litigants' ability to obtain injunctive relief. The whole purpose of Section 12601 was to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" created by *City of Philadelphia*. Committee Report, 137.[6] Thus, the legislative history indicates that Section 12601 was a reaction against constraints on the United States' authority to seek injunctive relief against constitutional violations. This indicates that Congress intended to

---

[5] To be sure, the legislative history of the 1991 Bill also discusses the Rodney King incident and other incidents of police misconduct, but nothing in that legislative history supports Defendants' argument that the text must therefore be strictly limited to apply only to incidents of this nature.

[6] Colorado acknowledges that *City of Philadelphia* created an enforcement "gap." Def. Mot. 16. They err, however, in asserting that "gap" was in the ability to criminally prosecute law enforcement misconduct. The United States has had criminal enforcement authority since 1874. *See* 18 U.S.C. §§ 241 and 242. The gap was in the authority to seek injunctive relief.

13

give the Attorney General broad and robust authority to address such violations. Defendants'

argument gets it exactly backwards.

**B.      Section 12601 and Section 1983 Should Be Interpreted *In Pari Materia*.**

Section 12601 and 42 U.S.C. § 1983 (Section 1983) are sister statutes that address the same

subject—remedying civil rights violations by government actors. *See United States v. Cnty. of*

*Maricopa,* 889 F.3d 648, 653 (9th Cir. 2018). Under the *in pari materia* canon, statutes that

address the same subject matter should be construed consistently with each other. *See Wachovia*

*Bank v. Schmidt*, 546 U.S. 303, 305 (2006); *see also Branch v. Smith*, 538 U.S. 254, 281 (2003)

(holding that "if divers statutes relate to the same thing, they ought all to be taken into consideration

in construing any one of them") (quoting *United States v. Freeman*, 3 How. 556, 564 (1845)). In

*County of Maricopa,* the court noted that Section 12601 shares important similarities with Section

1983. *Id*. at 653. Congress enacted Section 1983 to create a broad remedy for violations of

federally protected civil rights. *Id*. (citation and quotation marks omitted). Congress likewise

enacted Section 12601 as a remedy for violations of federal civil rights. *Id*. Both statutes impose

liability on local governments. *Id*. "Indeed, *the language of § 12601 goes even further than*

*§ 1983*, making it unlawful for 'any governmental authority, or any agent thereof, or any person

acting on behalf of a governmental authority' to engage in the prohibited conduct." *Id*. (emphasis

added).[7] This Court plainly should interpret the statutes *in pari materia*—construing Section

12601 consistent with the way courts have construed Section 1983.

Congress passed Section 1983 as part of the Ku Klux Klan Act of 1871, ch. 22, 17 Stat. 13

(Klan Act). As the name of the Klan Act implies, the members of the 42nd Congress who voted

---

[7] *See also United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *7 (S.D. Ohio 2000)
(holding that the grant of authority to the Attorney General reflected in Section 12601 was drafted
in light of Section 1983).

14

to enact Section 1983 had a very specific problem in mind (vindicating the constitutional rights of the freedmen). Moreover, despite the statute's broad remedial language, it languished in obscurity for nearly a century.[8] If Defendants' theory of Section 12601's statutory interpretation were correct—i.e., that the Court should apply the statute to redress only the few types of constitutional violations that Defendants think should be redressed—then Section 1983 likewise would have been cabined in and would long ago have been relegated to the status of a historical relic of the Reconstruction Era. After all, Section 1983 was passed to address a particular problem and it was sparsely enforced for decades. Thankfully, that did not occur. Section 1983 ultimately emerged as a powerful engine for vindicating deprivations of constitutional rights by government actors.

In *Dennis v. Higgins*, 498 U.S. 439, 443 (1991), the Supreme Court held that "[a] broad construction of Section 1983 is compelled by the statutory language, which speaks of deprivations of any rights, privileges, or immunities secured by the Constitution and laws." *Id*. at 443 (citation and internal quotation marks omitted). Section 12601 contains language that is practically identical to the language that compelled a broad construction of Section 1983 ("deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws"). Accordingly, Section 12601's plain language likewise compels a broad construction.

Moreover, a remedial statute "is broadly construed, and "must not be interpreted or applied in a narrow, grudging manner." *Uronis v. Cabot Oil & Gas Corp*., 49 F.4th 263, 269 (3d Cir. 2022). *See also Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1232 (10th Cir. 2014) ("remedial statute . . . must be construed broadly"). Section 12601 is a remedial statute that the Court should interpret broadly to achieve its remedial purpose. *See Cnty. of Maricopa*, 889 F.3d

---

[8] "Despite its noble beginnings, § 1983 remained in disuse for nearly a century." Rodney A. Smolla, *The history of § 1983—The Civil Rights Act of 1871*, 2 Federal Civil Rights Acts § 14:2 (3d ed. 2026) (citations omitted).

15

at 653.  Similarly, the Court should reject efforts to impose a "narrow" or "grudging" interpretation on the statute.

## VI.     Defendants' Arguments That Section 12601 Does Not Apply Are Meritless.

Defendants advance several arguments in support of their assertion that Section 12601 does not impose liability.  Plaintiff will address those arguments in this section.

### A.     No Authority Supports Defendants' Interpretation of Section 12601.

There is no support for Defendants' limited view of Section 12601's scope.  According to Westlaw, as of July 6, 2026, Section 12601 (or, as it was previously codified, 42 U.S.C. § 14141) has been cited in 654 cases.  Plaintiff's counsel reviewed all 654 cases.  In the overwhelming majority of those cases (approximately 95%), courts dismissed *pro se* plaintiffs' attempts to assert a private right of action under the statute or mentioned the statute only incidentally in their discussion of other issues.  Of the handful of remaining cases, only six courts engaged in any meaningful analysis of the statutory text.  Based on this exhaustive research, no court has ever held that Section 12601 should be interpreted to radically narrow the reach of its plain text as Defendants suggest.

### B.     Enforcement of an Unconstitutional Law Incurs Section 12601 Liability.

According to Defendants, Section 12601 does not impose liability when law enforcement officers are acting pursuant to a law, because that would, in effect, be an attack on the law itself.  Def. Mot. 15.  <u>No case</u> supporting Defendants' proposed limitation exists.  Indeed, just the opposite is true.  For example, one of the issues *Maricopa County* decided was whether Section 12601 authorizes municipal liability for the implementation of official policies.  The court held that it does. *Id*. at 652-53.  Importantly, the court found that Section 12601

> . . . *imposes liability on a governmental authority whose own official policy causes*
> it to engage in 'a pattern or practice of conduct by law enforcement officers' that

> deprives persons of federally protected rights . . ..  In short, Maricopa County is liable for violations of . . . § 12601 stemming from its own official policies.

*Id*. at 653 (emphasis added).  The difference between the "official policy" at issue in *Maricopa County* and the law at issue here is of no consequence.  As common sense indicates, there is "no question" that a duly enacted law reflects the "official policy" of the governmental authority that enacted it.  *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009).

Similarly, in *United States v. Town* of *Colorado City*, 935 F.3d 804, 810 (9th Cir 2019), the court held that the legislative history of the 1991 Bill supports the conclusion that the United States may prosecute municipalities under Section 12601 when local police departments violate constitutional rights, and this is the case "*whether or not* those violations resulted from implementation of an official policy . . .."  *Id*., 935 F.3d at 810 (emphasis added).

Unsurprisingly, counter to Defendants' assertion, the Department has used Section 12601 to remedy law enforcement officers' enforcement of unconstitutional laws.  For example, in the Department's Report of Investigation of the Ferguson Police Department, March 4, 2015 (available at http://bit.ly/4vWiJ2j),[9] the Department reported that law enforcement officers' enforcement of Ferguson, Missouri's unconstitutional Failure to Comply municipal ordinance was one of the patterns or practices of conduct that gave rise to constitutional violations in violation of Section 12601.  *Id*. at 16, 19.

Defendants nevertheless argue that law enforcement officers' enforcement of a criminal statute cannot be a basis of liability because the statute itself, and not the officers' enforcement of the statute, deprives persons of their constitutional rights.  Def. Memo. 15.  This is wrong, as

---

[9] The Court may take judicial notice of *this* report.  *See Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (on a motion to dismiss, a court may consider "public records subject to judicial notice").  This report actually is publicly available on the Department's website.

17

*County of Maricopa* plainly holds. *See id*., 889 F.3d at 653. Moreover, Defendants' position

conflicts with decisions under Section 12601's sister statute, Section 1983. In *Monell v. Dep't of*

*Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court stated that a city "can be

sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that

is alleged to be unconstitutional *implements or executes* a policy statement, ordinance, regulation,

or decision officially adopted and promulgated." *Id*. at 690 (emphasis added). Thus, it is the

"*execution* of a government's policy . . . [that] inflicts the injury [for which] the government as an

entity is responsible under § 1983." *Id*. at 694. (emphasis added). Thus, contra Defendants'

assertion, it is the implementation or execution of a law that "inflicts the injury," *id*., and not merely

the law's existence.

This is plain from *Heller* itself. There, the Court ordered entry of an injunction barring the

District of Columbia's law enforcement officers from enforcing the statute.[10] That order would

make no sense if those law enforcement officers' conduct of enforcing the unconstitutional law

was not the conduct that resulted in the deprivation of the plaintiffs' Second Amendment rights.

Defendants seem to be arguing that *Heller* got it wrong.[11] Plaintiff's rhetoric cannot overcome

binding Supreme Court precedent. Thus, the State is liable under Section 12601, "when

*enforcement* of its [law] causes a constitutional deprivation." *See Christensen v. Park City Mun.*

*Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009) (emphasis added). *See also Grossman v. City of*

---

[10] Technically, the court of appeals ordered the district court to enter judgment for the plaintiffs in accordance with their prayer for relief, *Parker v. District of Columbia*, 478 F.3d 370, 401 (D.C. Cir. 2007), and the Supreme Court affirmed that order. *Heller*, 554 U.S. at 636. The plaintiffs' prayer for relief requested the district court to issue an "order permanently enjoining" the District and its "officers, agents, servants, [and] employees" from "from *enforcing*" the unconstitutional ordinances. *See* page 9 of the "Complaint," (ECF 1), in *Heller v. District of Columbia*, Case No. 2003-cv-213, United States District Court for the District of Columbia (emphasis added).
[11] Individual officers cannot be held liable for damages under Section 12601, because the statute provides for only equitable and declaratory relief. 34 U.S.C.§ 12601(b).

*Portland*, 33 F.3d 1200, 1203–04 (9th Cir. 1994) (holding that plaintiff's claim stemmed from his arrest pursuant to an unconstitutional law).

It follows that Defendants are wrong when they argue that the General Assembly's enactment of the Magazine Ban (as opposed to its enforcement) inflicts the constitutional injury. *See* Def. Mot. 15.  This argument runs headlong into established law supporting this Court's authority to enjoin the ongoing enforcement of an unconstitutional law.  Indeed, the mere existence of a law does not violate anyone's rights if the law is never enforced.  That is why no one has standing to challenge a moribund law.  *See Mayle v. State of Illinois*, 956 F.3d 966, 970 (7th Cir. 2020) (citation omitted) (holding that plaintiff lacked standing to challenge criminal laws that were no longer enforced but remained in statute books "as a residue of legislative inertia").  Where criminal laws are concerned, people's rights are violated when other people (usually law enforcement officers) engage in conduct that violates them.  Thus, the remedy for an unconstitutional statute is to enjoin its enforcement, not to order the legislative body to repeal it.  Courts have no power to do the latter.  *See Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021) (No court may enjoin challenged laws themselves; an injunction only prevents "named defendants from taking specified unlawful actions."); Jonathan Mitchell, *The Writ-Of-Erasure Fallacy* 104 VA. L. Rev. 933, 936 (2018) ("[C]ourts have no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute.").  Accordingly, Defendants are mistaken when they argue that this Court cannot enjoin their unconstitutional conduct.

## C. Defendants' Extratextual Criterion Frustrates the Statute's Remedial Purposes.

The plain text of Section 12601 prohibits law enforcement "conduct" if it deprives persons of their federal rights.  Deprivation of rights is the statute's sole criterion for that misconduct to be

19

actionable. The statute applies to misconduct of any type or nature whatsoever if it meets that criterion. There is no need to inquire into the type of misconduct in question.

The extratextual gloss for which Defendants advocate would add a second criterion. Under Defendants' theory, Section 12601 would prohibit conduct if it meets the following two criteria: (1) it is a particular type of misconduct (i.e. it falls within Defendants' concept of "abusive police practice"), and (2) it deprives persons of their rights. Adding this criterion creates an obvious problem—as a practical matter, it frustrates the statute's remedial purpose.

Defendants' new criterion would create a threshold inquiry in every Section 12601 case: Is the *type* of misconduct alleged in the United States' complaint the type of conduct prohibited? But "abusive police practice" is a vague, imprecise, and undefined term. Therefore, if the new criterion were imposed on the statute, every defendant would have a ready-made ground for a motion to dismiss: "my conduct is not the type of misconduct prohibited by the statute." Every case would immediately bog down like this one while the parties litigate that threshold question.

As discussed above, a remedial statute such as Section 12601 must be interpreted liberally to achieve its remedial purpose. Adding this new criterion would frustrate that purpose and this Court should decline to do so. *See Raiford v. Buslease, Inc*., 825 F.2d 351, 354 (11th Cir. 1987) (rejecting "restrictive" interpretation of a statute that would frustrate its "broad remedial purpose"); *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr*., 597 U.S. 424, 439 (2022) (rejecting reading that would make statute "unworkable").

**D.      The Department's Past Practice Does Not Cabin the Scope of the Statute.**

Defendants engage in an extensive discussion of past agency practice with respect to the enforcement of Section 12601. Def. Mot. 7-9. According to Defendants, in the past, the Civil Rights Division has focused exclusively on Defendants' characterization of abusive police tactics

20

cases and has not enforced Section 12601 the way it is enforcing the statute in this action.[12]  Even if the Court were to consider the matters that Defendants raised, their discussion of past agency practice would not move the needle in favor of their motion for several reasons.

First, the Defendants' assertions are false.[13]  The Division's past practice has not been as limited as Defendants suggest.[14]  For example, one of the Division's major enforcement actions was brought when the defendants violated the Establishment Clause of the First Amendment.  *See United States v. Town of Colorado City*, 935 F.3d 804, 806 (9th Cir. 2019).  There were no allegations of police brutality.  In *Maricopa County*, the allegations of misconduct included filing baseless lawsuits in retaliation for exercising First Amendment rights.[15]  It is difficult to imagine conduct less similar to the incident involving Rodney King.  If the Department has employed the statute to remedy First Amendment violations, why can't it also employ it to remedy Second Amendment violations?  Defendants do not say.

More importantly, even if it is true that the Department is enforcing the statute in a way that is different from its past practice, that fact has no relevance to the scope of the authority Congress granted to the Attorney General in Section 12601.  In other words, past agency practice

---

[12] As noted earlier, the Court should limit its review to the "four corners" of the Compliant.  Moreover, Defendant's allegations about the scope of past agency practice are contested, and that factual dispute cannot be resolved in Defendants' favor at this stage of the litigation.

[13] Here, Defendants want this Court to decide their motion to dismiss on the basis of a disputed factual claim.  The Court should decline to do so.  *City of Los Angeles*, 476 U.S. at 494.

[14] Indeed, past administrations have exercised their prosecutorial discretion to use Section 12601 to investigate and bring enforcement actions to remedy:  enforcement of local ordinances that are facially unconstitutional; First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations, Title VI violations, and to challenge the conduct of law enforcement exercised through court clerks, prosecutors, non-sworn staff, and sworn officers and deputies.  *See* "Special Litigation Section Cases and Matters, Law Enforcement Agencies," available at https://www.justice.gov/crt/special-litigation-section-cases-and-matters#police.  Arguably, some of the findings that past administrations have reached have identified alleged misconduct beyond the bounds of a constitutional or federal statutory requirement, but none have suffered the opposition offered here.

[15] *See United States v. Maricopa County*, 915 F. Supp. 2d 1073, 1081 (D. Ariz. 2013).

does not delineate the scope of the authority set forth in a statute.  Nor does it bind the agency or

preclude it from deviating from that practice in the future.  The Supreme Court made this clear in

*United States v. Am. Union Transp*., where it stated:

> An administrative agency is not ordinarily under an obligation immediately to test the limits of its jurisdiction.  It may await an appropriate opportunity or clear need for doing so.  It may also be mistaken as to the scope of its authority . . . Although failure to exercise power may be significant as a factor shedding light on whether it has been conferred . . . that fact alone neither extinguishes power granted nor establishes that the agency to which it is given regards itself as impotent.  *Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise.*

327 U.S. 437, 454 n.18 (internal citations and quotation marks omitted) (emphasis added).  *See*

*also Fed. Trade Comm'n v. Bunte Bros*., 312 U.S. 349, 352 (1941) ("Authority actually granted

by Congress of course cannot evaporate through lack of administrative exercise."); *United States*

*v. E. I. du Pont de Nemours & Co*., 353 U.S. 586, 590 (1957) (holding that the mere failure of an

administrative agency to act is in no sense "a binding administrative interpretation" that the

government lacks the authority to act); *Nat'l Ass'n of Sec. Dealers, Inc. v. S.E.C*., 431 F.3d 803,

811 (D.C. Cir. 2005) (explaining that agency's past practice may be noteworthy, but court is not

legally bound by its past practices under a statute); *Jones Bros., Inc. v. Sec'y of Labor, Mine Safety*

*& Health Admin*., 68 F.4th 289, 301(6th Cir. 2023) (holding that an agency's past enforcement

practices did not alter its authority under the relevant law).  Not only is an agency not bound by its

past practice, it might also be required to reverse that practice if it contradicts the statute.  *See*

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (internal citation

omitted) ("[W]e have to give effect to this plain command . . . even if doing that will reverse the

longstanding practice under the statute.").

In the face of this precedent, Defendants cite *Loper Bright Enterprises v. Raimondo*, 603

U.S. 369, 386 (2024), where the Court held that an agency's longstanding practice can inform a

22

court's analysis of an ambiguous statute.  Def. Mot. 19.  Defendants' reliance on *Loper Bright* is problematic for three reasons. First, in that passage, the *Loper Bright* court was *not* referring to the interpretation of unambiguous statutes such as Section 12601. Second, in the very next paragraph, the Court stated that even if a court considers past practice, it is not bound by it.  *Id*.  Third, *Loper Bright* stands for exactly the contrary proposition for which Defendants cite it.  Defendants claim that it supports an extratextual gloss on Section 12601.  But, the Court directed the opposite.  The Court stated that "statutes . . . have a single, best meaning" that is "'fixed at the time of enactment.'"  *Id*. at 400 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)).[16]

### E.    The United States Is Not Asserting that It Has "New" Power.

Defendants say that "Section 12601 has historically been used only to remedy unlawful conduct by law enforcement," and "[o]nly in the last few months . . . has the United States initiated Section 12601 claims to challenge laws."  Def. Mot. at 19, 20.  Defendants then argue that that the United States claims to have found an "unheralded" new power[17] under Section 12601 to challenge laws, and that claim should be met with skepticism.  *Id*., at 20.  Defendants' argument is built on the foundation of their flawed understanding of Plaintiff's claims.

---

[16] Indeed, the passage in *Loper Bright* most applicable to this case is from Justice Gorsuch's concurrence where he cautioned against following the example of those who "abhor plain meaning and preferred instead to elevate legislative history and their own curated accounts of a law's 'purpose' over enacted statutory text."  *Id*., 603 U.S. at 443 n.6 (2024) (Gorsuch, J., concurring) (cleaned up) (internal citation and quotation marks omitted).  In other words, Justice Gorsuch warned against the very tactics used by Defendants, who want to elevate their "curated account" of Section 12601's real "purpose" over the statutory text.

[17] Defendants' injudicious use of an ellipse in their treatment of *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014), cannot go unmentioned.  The full passage quoted by Defendants speaks of an agency's claim to have found an "unheralded" power to regulate a *significant portion of the American economy*.  *Id*. at 324.  (emphasis added).  The Court held Congress would speak clearly if it wished to assign to an agency decisions of *vast economic and political significance*.  *Id*. (emphasis added).  Defendants edited the quoted passage beyond recognition so they could shoehorn the case into their motion.

Defendants acknowledge that, historically, the United States has used Section 12601 to "remedy unlawful conduct by law enforcement." That is true. Defendants err, however, when they say this case is different. As discussed above, the remedy for an unconstitutional statute is to enjoin its enforcement, not to order the legislative body to repeal it. The United States acknowledges that this Court has no power to do the latter. Defendants are simply wrong when they assert that the United States seeks to "challenge laws" as opposed to "conduct by law enforcement." The United States is seeking to enjoin CO LEO's enforcement of the law. That enforcement conduct is the conduct that gives rise to Section 12601 liability. Thus, in this case, the United States is not asserting a new power under Section 12601. It is using the statute the same way it has always used it—to remedy unlawful conduct by law enforcement.

**F.     The Scope of a Statute Is Not Constrained by the Limits of the Drafters' Imagination; Nor Is the Statute Limited to Addressing the "Principal Evil" with which They Were Concerned.**

The members of the 42nd Congress who voted to enact Section 1983 would doubtless have been astounded by some of the myriad novel applications of the statute. Similarly, those who adopted the Civil Rights Act of 1964 almost certainly did not anticipate that one day the statute would be interpreted to protect gay and transgender employees. But in interpreting a statute, it simply "does not matter whether Congress considered or anticipated the specific application at issue." *See White v. United Airlines, Inc*., 987 F.3d 616, 624 (7th Cir. 2021) (citation and internal quotation marks omitted). "The limits of the drafters' imagination" do not in any way constrain the scope of the statute. *Id*. Moreover, as the Supreme Court has "said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 1955–56, 141 L. Ed. 2d 215 (1998) (cleaned up; citation omitted).

24

Defendants say the United States' "unprecedented" use of Section 12601 would dramatically expand its authority under the statute. Def. Mot. 19. This is simply incorrect. Either the plain text of the statute confers certain authority on the United States or it does not. The fact that the United States has never used the statute in a particular way is irrelevant to the issue of whether it has the power to do so. No one had ever used Section 1983 to seek recognition of same sex marriages until someone did. The fact that it had never been done in the 145-year history of the statute was irrelevant to whether the statute conferred the authority to seek redress for that purpose. Defendants also argue that the legislative history of the 1991 Bill indicates that "abusive police practices" were the principle evil Congress sought to address when it enacted Section 12601 three years later. *See, e.g.,* Def. Mot. 16. Even if that were the case, the scope of the United States' authority embodied in the text of the statute would not be affected.

## G.    Legislative History Is Not the Law

Defendants' arguments find no purchase in the text of Section 12601. Now, they face the same predicament the defendants in *Colorado City* faced, and that court's observation is equally pertinent: "Unable to muster support for its position in the statutory text, Colorado City urges us to examine § 12601's legislative history. But the Supreme Court has admonished that 'legislative history is not the law.' That principle is particularly salient in a case where the legislative history is *virtually non-existent*." 935 F.3d at 810 (cleaned up; citations omitted; emphasis added).

Defendants nevertheless urge this Court to impose their preferred judicial gloss on the text and narrow its application based on that same virtually non-existent legislative history. The first and most fundamental problem with this is that the statute is not ambiguous and, therefore, legislative history is irrelevant to its interpretation. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) (quoting *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323,

25

338-39 (D.C. Cir. 2020)) (holding that "we need not address legislative history if 'after analyzing the text, structure and context, we conclude that the language is unambiguous'").  This is true even if—as Defendants mistakenly believe—the legislative history of the 1991 Bill actually pointed in a different direction than the text of Section 12601.  "[T]here would be no need for a rule—or repeated admonition from the Supreme Court—that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions."  *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 494–95 (D.C. Cir. 2004).

Defendants' second problem is that the legislative history—such as it is—actually supports a very expansive interpretation of the scope of Section 12601 consistent with the broad scope of Section 1983 and Congress' desire to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" that *City of Philadelphia* created.  Finally, Defendants' devotion to legislative history has the same problem the Court articulated last month in *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*, 146 S. Ct. 1546, 1558–59 (2026).  The Court noted that there is really no way to know what the committee members (much less the other members of Congress) thought about a bill by perusing a committee report.  146 S. Ct. at 1558.[18] The Court declined to revive the "old-time devotion to legislative history," because it is far better to focus on the text of the statute instead of a "psychoanalysis of Congress."  *Id*. at 1559 (citation omitted).

---

[18] This observation has even greater force here because the committee members addressing the 1991 Bill were members of a different Congress and they were talking about a different bill that was under consideration three years before a later Congress enacted Section 12601.

26

**H.      Congress Could Have Easily Drafted a Narrow Statute**

In *Colorado City*, the court noted that if "Congress wished to eliminate respondeat superior liability under § 12601, it could have easily done so with explicit statutory language.  Its decision not to do so suggests that it intended for § 12601, like most civil rights statutes, to allow for respondeat superior liability."  935 F.3d at 810 (internal citation omitted).  Similarly, here there is no doubt that when Congress drafted Section 12601, it could have easily written "conduct that constitutes abusive police practices" instead of just "conduct."  *See United States Postal Serv. v. Postal Regul. Comm'n*, 963 F.3d 137, 140 (D.C. Cir. 2020) (holding that if Congress "intended to cabin" a statute, it could have done so easily).  Congress's decision not to cabin the statute in the manner that Defendants suggest was a deliberate choice.  The Court must respect that choice.

**VII.    The United States Sovereign Interests Support the Complaint.**

Defendants have failed to establish that Section 12601 does not authorize the United States to assert its claims for injunctive relief in this case.  In addition, they have not established that the United States cannot seek injunctive relief to vindicate its own sovereign interests.  It is "beyond doubt" that the United States suffers "an injury to . . . its sovereignty" when a federal law is violated, *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000), including the United States Constitution, *see Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-431 (1976).  There is similarly no "doubt[]" that "the United States" may "represent [its citizens] as *parens patriae*" to "enforce their [federal] rights" in court, *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923) (emphasis added).  The Second Amendment protects just such a fundamental federal right. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010) (acknowledging that the Second Amendment protects the right to keep and bear arms "among those fundamental rights necessary to our system of ordered liberty").

27

**VIII.  Defendants' Argument That the United States Lacks Standing Is Meritless**

Colorado claims that the United States lacks standing because an injunction against the State and DPS would not redress the constitutional injuries other law enforcement agencies might inflict if they enforced the unconstitutional law.  Def. Mot. 24.  The State is wrong.

First, Colorado scoffs at the allegations of the Complaint and denigrates the United States for having sued "two random law enforcement agencies."  Def. Mot. 23.  A glance at the caption reveals the State's error.  Plaintiff has sued the State and the statewide law enforcement department of the State (i.e., DPS).  The State Patrol and CBI are agencies within DPS.  Compl. ¶ 9.  A glance at Section 12601 reveals why this choice is not "random."  The statute makes it unlawful for law enforcement officers "acting on behalf of a governmental authority" to engage in a pattern or practice of conduct that deprives persons of their constitutional rights.  34 U.S.C. § 12601(a).  The law enforcement officers of the State Patrol and CBI act on behalf of the State and DPS—i.e., the governmental authorities Plaintiff has sued.  Compl. ¶ 56.

Defendants argue that an order enjoining the State and DPS from enforcing the Magazine Ban "will not redress the injury the United States alleges."  Def. Mot. 25.  Their theory is that even if the State and DPS are enjoined from enforcing the Magazine Ban, a "myriad of local law enforcement agencies, such as police departments and sheriff's offices throughout Colorado, would remain free to continue investigating and assisting the district attorneys with enforcing the statute."  Def. Mot. 26-27.  That other juridical entities may also violate constitutional rights does not permit Defendants' unconstitutional law enforcement misconduct.   Also, Defendants' argument runs headlong into *Sanchez v. Torrez*, 173 F.4th 1202 (10th Cir. 2026), where the court held that standing does not require "complete redressability."  The court stated redressability exists if there is a "connection between the alleged injury and the judicial relief requested."  *Id*. at 1216

(quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).  "However, the Supreme Court has rejected interpretations of the rule that demand *complete redressability*, stressing that a plaintiff need show only that a favorable decision would redress "*an* injury," not "*every* injury."  *Id*. at 1217 (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (first emphasis added; later emphasis in original)). "Nor must any one injury be completely redressable so long as a favorable decision would 'alleviate the injury to some extent.'"  *Id*. (citations omitted).

In *Sanchez*, the plaintiffs sought to enjoin New Mexico officials from enforcing a law that gave the public access to their land.  New Mexico argued redressability was not met because even if the court gave the plaintiffs the relief they requested, members of the public could bring legal actions to achieve the same result.  The Tenth Circuit rejected New Mexico's argument.  The court held that it had never required complete redressability.  *Id*. at 1217.  Standing exists if the "named defendants" have "authority to enforce the challenged law."  *Id*.  The court has rejected arguments that "shared enforcement authority . . . defeats redressability."  *Id*.

In this case, Defendants argue that redressability is defeated because they share authority to enforce the Magazine Ban with local law enforcement agencies and district attorneys.  Colorado's argument is wrong for the same reason New Mexico's argument was wrong in *Sanchez*.  Defendants cite *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253 (10th Cir. 2024), but that case does not conflict with *Sanchez*.  In *We the Patriots*, redressability was not defeated by shared enforcement authority.  Instead, the court held that the plaintiffs' route to meaningful relief was completely blocked because other statutes (that they did not challenge) prevented them from engaging in their desired conduct.  *Id*. at 1259.  The court cited *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014), where the court held that a plaintiff fails to establish redressability when an unchallenged legal obstacle is enforceable separately and distinctly from the challenged obstacle.

29

*Haaland v. Brackeen*, 599 U.S. 255 (2023), cited by Defendants, is also inapposite. *Haaland* was not a shared authority case. Instead, a plaintiff sued federal officials to bar them from enforcing the ICWA statute, but the Court held the plaintiff lacked redressability because only state officials (and not the federal officials she sued) had authority to enforce the statute. *Id*. at 293. In other words, the plaintiff lacked redressability because the parties she sued lacked any enforcement authority at all, not because they shared that authority with others.

Finally, Defendants argue the United States has no standing because the Court cannot prevent district attorneys from enforcing the statute. Def. Mot. 28. In other words, Defendants assert that even if this Court finds that the Magazine Ban is unconstitutional, it is powerless to stop district attorneys from enforcing it anyway. This argument fails under *Sanchez*, too. But, the argument also fails under *Am. C.L. Union v. Johnson*, 194 F.3d 1149 (10th Cir. 1999). There, the court held that a New Mexico statute was unconstitutional and enjoined its enforcement. *Id*. at 1160. The state complained when the district court included district attorneys in the scope of its injunction even though they were not parties. *Id*. at 1163. The Tenth Circuit affirmed because Rule 65(d) provides that an injunction binds the enjoined party and those in active concert with it. *Id*. District attorneys in New Mexico act on behalf of the state. Thus, to the extent the district attorneys attempted to enforce the unconstitutional law, they would be acting in concert with the state, and the district court properly included them within its grant of injunctive relief. Colorado district attorneys also act "in behalf of the state" when they prosecute crimes. Colo. Rev. Stat. § 20-1-102(1). Thus, as in *Johnson*, if this Court were to enter an order enjoining Defendants from enforcing the Magazine Ban, it could properly include district attorneys within its scope.

**CONCLUSION**

For the foregoing reason, Plaintiff respectfully requests the Court to deny Defendants' motion. If this Court grants Defendants' motion in any part, Plaintiff seeks leave to amend.

30

DATED: July 21, 2026                    Respectfully submitted:

                                        HARMEET K.  DHILLON
                                        Assistant Attorney General
                                        Civil Rights Division

                                        JESUS OSETE
                                        Principal Deputy Assistant Attorney General

                                        R.  JONAS GEISSLER
                                        Deputy Assistant Attorney General

                                        */s/ Barry K. Arrington*
                                        BARRY K. ARRINGTON
                                        Acting Chief
                                        Second Amendment Section

                                        WILLIAM J.  HANRAHAN
                                        PATRICK TODD
                                        Trial Attorneys
                                        Second Amendment Section

                                        United States Department of Justice
                                        950 Pennsylvania Avenue, NW
                                        Washington, D.C.  20530
                                        Telephone:(202) 304-8447
                                        E-Mail:  barry.arrington@usdoj.gov

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

31

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*

_____

Barry K. Arrington