IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-01950-SKC-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF COLORADO, and

COLORADO DEPARTMENT OF PUBLIC SAFETY,

Defendants.

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................ 2

I. Section 12601 does not authorize facial challenges to state laws. ............ 2

A. Plaintiff confirms that it misreads the statutory text. .......................... 2

B. No authority supports Plaintiff's atextual reading. .............................. 5

C. The statute's history confirms the tailored scope of Section 12601. ..... 8

D. Past practice confirms the textual reading that Section 12601 does not permit facial challenges to statutes. .................................................. 10

E. Plaintiff's remaining arguments also fail. ........................................... 12

II. The Complaint fails to plead a plausible pattern or practice. ................. 15

III. Plaintiff lacks standing because the alleged harm is not redressible by a favorable ruling. ........................................................................... 17

IV. The court should dismiss without leave to amend. ................................ 20

CONCLUSION ........................................................................................ 20

## INTRODUCTION

Plaintiff's opposition only serves to demonstrate the fatal flaws of its claim. It offers no textual arguments that would permit a facial challenge to *legislative enactments* when Section 12601 is specifically directed to address "a pattern or practice of conduct by law enforcement officers." 34 U.S.C. § 12601. Plaintiff likewise offers no textual basis to address the express limitations that Congress imposed on this tailored cause of action. Instead, it asks the Court to ignore the text and rewrite Section 12601 to be "*in pari materia*" with 42 U.S.C. § 1983. But all of the interpretative cannons require the opposite: a court may not rewrite the plain text of a statute and may not eliminate express limitations that Congress imposed. To the contrary, the fact that Congress clearly drafted a far narrower statute than Section 1983, with express limitations, must be assumed to be intentional. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–63 (2006). Plaintiff's unlawful power grab, based on authority purportedly hidden in plain sight for more than three decades, must be rejected. The Court should dismiss the Complaint because Section 12601 does not authorize Plaintiff's facial challenge.

For related reasons, the Court should also dismiss the Complaint for lack of standing because Plaintiff's purported injury is not redressable by a favorable decision. A favorable decision will offer no real-world relief because every violation of the large-capacity magazine restriction can continue to be enforced by district attorneys across Colorado, regardless of the outcome. Plaintiff's various contortions

to get around Section 12601's limits—which prevent it from obtaining relief against prosecutors for their independent prosecutorial decisions—all lack merit. The Court should dismiss the Complaint in its entirety without leave to amend.

## ARGUMENT

### I. Section 12601 does not authorize facial challenges to state laws.

Defendants moved to dismiss the Complaint for the straightforward reason that Section 12601 does not permit facial challenges to state laws, as demonstrated by the statute's plain text, history, and context. Dkt. 30 ("Mot.") at 11-20. In response, the United States argues that Section 12601 "plainly authorizes" it to take the unprecedented action of using its limited authority to challenge any law it dislikes. Dkt. 33 ("Opp'n") at 8. The Court should reject Plaintiff's arguments and its invitation to skirt the plain text of Section 12601, disregard the context of its enactment, and ignore the historic application of the statute, stretching over thirty years without anything comparable to this suit.

#### A. Plaintiff confirms that it misreads the statutory text.

The United States' Opposition brief confirms that it misreads Section 12601's statutory text. By Plaintiff's telling, the enforcement of *any* state law amounts to a law enforcement "pattern or practice," because law enforcement officers have a general duty to enforce the law. Opp'n at 6-7, 9. This reading would swallow the

entire text and structure of Section 12601, ignoring the express limitations that Congress carefully placed into the statute.

Section 12601 targets conduct by law enforcement that causes deprivations of constitutional rights, not legislative enactments. The plain text of the statute makes this clear: by its own terms, it only reaches "law enforcement officers" and "officials and employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles;" it targets *how* those law enforcement officers perform their duties; and instances in which *that conduct* causes a deprivation of rights. 34 U.S.C. § 12601; *see* Mot. at 13-15.

Plaintiff's bellicose insistence that Section 12601 authorizes their novel lawsuit cannot overcome the plain text. The statute says *nothing* about legislative enactments, much less provides authority for the Attorney General to pursue roving actions to challenge them.

Faced with this plain and plainly understood statutory text, Plaintiff creates a strawman mischaracterization of Defendants' Motion. Plaintiff states that Defendants argued Section 12601 "prohibits only *some* law enforcement misconduct that deprives people of their rights," and that Defendants read the word "conduct" out of the statute. Opp'n at 9, 11. Not so. Defendants faithfully apply the text of Section 12601 and explain that where the alleged deprivation is caused by something unrelated to law enforcement conduct—such as a legislative enactment—

there is no "pattern or practice of conduct" and Section 12601 does not apply. Mot. at 14-15.

Plaintiff's analogy about using Section 12601 to enjoin a state law that restricts residents' First Amendment rights only underscores its misunderstanding. There, it is the hypothetical law prohibiting "grossly offensive" social media posts, not officers' "conduct," that "deprives" citizens of free expression rights, and enjoining that conduct would not "eliminate" the violation. 34 U.S.C. § 12601(b). Plaintiff suggests that Defendants would support a Section 12601 suit to enjoin enforcement of that law, but have drawn some unstated, impermissible line around the Second Amendment. Opp'n. at 11. Plaintiff entirely misconstrues Defendants' Motion, which is about Section 12601, not the Second Amendment.[1] Defendants' point is that any and every attempt to use Section 12601 to facially enjoin any state law fails for the same reason that the present suit fails: Section 12601 does not authorize facial challenges against state laws, regardless of whether that challenge invokes the First Amendment, Second Amendment, or any other constitutional provision or statute. The Court should not find such unrestrained federal power when Congress never mentioned it in the statutory text.

[1] Plaintiff's claim that Defendants "conceded" the law violates the Second Amendment is baseless. Opp'n. at 4-5. Defendants' Motion to Dismiss attacks the claim as non-cognizable and Plaintiff's standing to bring it. Defendants did not address Plaintiff's (erroneous) legal conclusions and have conceded nothing.

### B. No authority supports Plaintiff's atextual reading.

Lacking any textual support for its claim of vast authority to facially challenge state laws it does not like, Plaintiff contends that "no case" has expressly held Section 12601 cannot be used for such a suit. Opp'n at 16. But as Defendants argued, *see* Mot. at 9, 19-20, this is precisely because in the decades since Section 12601's enactment, the Justice Department has never sought to use it for this spurious purpose. As a result, no court has had to address this atextual reading. To Defendants' knowledge, the only court to have yet issued an order addressing Plaintiff's sweeping new claim of authority declined to issue a temporary restraining order in part because "it is apparent that the use of Section 12601 to facially challenge a state criminal law is, at the very least, a novel approach that deviates from the way the statute has historically been enforced." Order Den. Pl.'s Ex Parte Appl. for TRO at *5, *United States v. California*, No. 8:26-cv-01697-MRA-ADS, 2026 WL 2004372 (C.D. Cal. July 9, 2026), Dkt. 26.

Further, no court has interpreted Section 12601 to permit a facial challenge like Plaintiff seeks to bring here, including the cases it cites. *United States v. County of Maricopa, Arizona*, 889 F.3d 648 (9th Cir. 2018), involved a straightforward application of Section 12601 to redress a pattern and practice of police misconduct. There, a Justice Department investigation proved that "racially discriminatory policing policies *instituted by* [the Sheriff]" "targeted Latino drivers and passengers for pretextual traffic stops." *Id.* at 649 (emphasis added). The Court

of Appeals affirmed that Maricopa County faced Section 12601 liability because the Sheriff "acted as a final policymaker for the County" when he personally "adopted the racially discriminatory traffic-stop policies at issue." *Id.* at 653. *Maricopa* is thus readily distinguishable, as here the alleged deprivation is caused not by Colorado Bureau of Investigation ("CBI") or Colorado State Patrol ("CSP"), nor any policy of either, but rather a state criminal law enacted by the legislature.

*United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019), similarly does not support Plaintiff's position. There, a town's police force grossly abused its law enforcement authority by "selectively enforc[ing] the law based on religion," by punishing some residents who did not share certain religious beliefs and unlawfully protecting from prosecution others that did. *Id.* at 806-807.[2] The Ninth Circuit answered a question left open in *Maricopa* and held that a municipality may be held liable in a Section 12601 suit under a theory of *respondeat superior* where its police department abused its discretion and violated the rights of community members.[3] *Id.* at 808.

---

[2] Plaintiff also wrongly claims that this case involved "no allegations of police brutality," ignoring, *inter alia*, the Ninth Circuit's discussion of resident testimony describing excessive force and unlawful arrest, *id.* at 807, and the United States' investigatory findings that the town's law enforcement officers confiscated and shot all domestic dogs after a house-to-house search. *See* Compl. at ¶ 23, *United States v. Town of Colorado City*, No. 12-cv-8123 (D. Ariz. June 21, 2012), Dkt. 1.

[3] That Section 12601 allows for *respondeat superior* liability and thus authorizes the United States to litigate a range of instances of police conduct undercuts Plaintiff's argument that Defendants would render the statute's cause of action unduly

Neither *Maricopa* nor *Town of Colorado City* considered whether legislative bodies had enacted unconstitutional *laws*. Rather, the cases stand for the unremarkable proposition that the United States may use Section 12601 to address abuses by law enforcement, and that municipalities may be liable for such abuses. But this does not remotely support Plaintiff's sweeping argument that Section 12601 permits the United States to facially challenge laws based solely on law enforcement officers' general duty to enforce the law. *See* Opp'n at 6-7, 9, 11.

Plaintiff's reference to the Department of Justice's Report of Investigation of the Ferguson Police Department is similarly unavailing. Opp'n. at 17. That section of the report—relying on the sort of robust investigation that Plaintiff did not complete here—found that police officers routinely stopped and arrested people without reasonable suspicion in violation of the Fourth Amendment. *See* Report, 16-18. When those stopped refused to submit to an unlawful detention, officers would regularly charge them under the municipality's Failure to Comply ordinance. *Id.* at 19. Although that Report suggested that the overbroad ordinance may itself be unconstitutionally vague, *see id.* at 20, it concluded "the evidence is clear that *FPD's enforcement* of [the ordinance] is *unconstitutional in its application*." *Id.* at 21.

---

narrow. *See* Opp'n at 19-20. It also suggests that the actor-based limitations that counterbalance this breadth should not be casually swept aside. The cause of action designed by Congress "reflect[s] a balance of multiple competing interests," and this Court should "respect the formula that Congress prescribed." *Advoc. Christ Med. Ctr. v. Kennedy*, 605 U.S. 1, 19–20 (2025).

(emphasis added). And Plaintiff omits that the resulting lawsuit it brought against Ferguson did not bring any challenges to local ordinances. Compl., *United States v. City of Ferguson*, No. 16-cv-180 (E.D. Mo. Feb. 10, 2016), Dkt. 1.

### C. The statute's history confirms the tailored scope of Section 12601.

If Congress intended to grant the broad authority to challenge any state law, there would be some mention, or at the very least a hint, in the text, structure, or history of Section 12601. But there is none, and the history is instead clear that the statute was intended to address systemic police misconduct by closing a "gap in the law" that left both private parties and the United States unable to remedy such misconduct. H.R. Rep. No. 102-242 at 137-139 (explaining statute's purpose and discussing *United States v. City of Philadelphia*, 644 F.2d 187 (3rd Cir. 1980) and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). But no such remedial gap existed concerning challenges to state laws, including substantive criminal prohibitions. That much is clear from this case: litigants have (unsuccessfully) challenged the large-capacity magazine restriction. What Plaintiff dismisses as "some state court cases dealing with magazines," Opp'n. at 5, are merits decisions upholding the restriction under both the United States and Colorado constitutions. *See People v. Sgaggio*, Case No. 2023CV296 (El Paso Cnty. Dist. Ct. Nov. 12, 2024); *Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314 (Colo. 2020).

It would be "peculiar" to conclude that in "closing" the "gap" that limited remedies for pattern or practice police misconduct, "Congress actually hid away" a cause of action "that reaches far beyond the . . . scenarios that prompted the legislation in the first place." *Fischer v. United States*, 603 U.S. 480, 492 (2024).

Defendants have analyzed this statutory context, *see* Mot. at 16-19, not to ask the Court to rewrite the statute, *see* Opp'n. at 11, but rather to emphasize that Congress clearly did not hide beneath the surface any broad authority to bring facial challenges against state criminal laws. Legislative history is of course "not the law," Opp'n. at 25, and Defendants do not suggest otherwise. But "[i]t makes sense to read" Section 12601 "in light of the history of the provision," and that context confirms the plain text's limited scope. *Fischer*, 603 U.S. at 491. The United States also argues that any reliance on legislative history is particularly inappropriate here "where the legislative history is virtually non-existent." Opp'n at 25; *see id.* at 26 n.18 (suggesting that reliance on the legislative history of Section 12601's predecessor statute is improper). But the United States relies on that same legislative history in this case, *id.* at 12-14, and has previously affirmed that while "[t]here is no separate legislative history for" Section 12601, "the legislative history of the predecessor bill is relevant because the language of that bill was identical, in pertinent part," Mem. of Law in Supp. of Joint Mot. for Entry of Consent Decree at 3 n.2, *United States v. City of Steubenville*, No. 97-cv-966 (S.D. Ohio Aug. 28, 1997),

Dkt. 2. Courts agree. *See, e.g.*, *United States v. City of Columbus*, No. 99-cv-1097, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000).

### D. Past practice confirms the textual reading that Section 12601 does not permit facial challenges to statutes.

Over thirty years of Plaintiff's historical usage of Section 12601 further confirms that the statute does not provide authority to pursue facial challenges of state law. *See* Mot. at 19-20. Courts "give effect to the clear meaning of [a] statute as written" "by reference to the language itself" as well as "the broader context of the statute as a whole." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1236(10th Cir. 2026) (citations and quotations omitted). And "[a] statute's broader context includes 'the longstanding practice of the government.'" *Id.* (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)). No such longstanding practice exists, and to the contrary Plaintiff has *never* used Section 12601 to facially challenge state criminal laws in the decades since its enactment. Nothing about the present litigation—from the lack of any investigation to Plaintiff's effort to enjoin a duly enacted state law—constitutes DOJ "using the statute the same way it has always used it." Opp'n. at 24. Instead, Plaintiff seeks to do here precisely what it disavows: assert a broad, "new" roving power. Opp'n. 23.

Plaintiff's contrary arguments regarding past practice lack merit. The United States seeks to sidestep this past practice, as illustrated by the Justice Department reports and memorandum offered by Defendants, *see* Defs.' Exs. A-C, Dkt. 30-1, 30-

2, and 30-3, by urging the Court to "disregard the extraneous materials submitted [by Defendants] and their arguments based on those materials." Opp'n at 2-3. But the Court can consider government records, Mot. at 7 n.3, even if this Department of Justice has removed from its website inconvenient materials that undermine its unprecedented arguments.

Next, Plaintiff counters that its "past practice has not been as limited as Defendants suggest," but cannot support that claim. Opp'n at 21. Plaintiff notes it previously brought a Section 12601 suit to vindicate First Amendment violations, *id.* (citing *Colorado City*, 935 F.3d 804). But as explained, *supra* at 6 n.2, that case challenged quintessential police misconduct, and in no way interprets Section 12601 as covering challenges to substantive criminal provisions. Plaintiff also claims, in a footnote, that it has previously "used Section 12601 to investigate and bring enforcement actions to remedy enforcement of local ordinances that are facially unconstitutional." Opp'n at 21, n.14. To support this contention, Plaintiff includes a link to its Special Litigation Section but fails to identify a single specific case therein that challenged "local ordinances." *Id.* Another district court rejected this exact claim regarding past enforcement actions against facially unconstitutional ordinances as "without cit[ation] to any authority or evidence." Order Den. Pl.'s Ex Parte Appl. for TRO at 5, *United States v. California*, 8:26-cv-01697-MRA-ADS, 2026 WL 2004372 (C.D. Cal. July 9, 2026), Dkt. 26.

### E. Plaintiff's remaining arguments also fail.

Plaintiff's reliance on Section 1983, Opp'n at 14-15, only undermines its arguments. Section 1983 and Section 12601 are not interchangeable. Congress chose different statutory language in Section 12601, imposing specific express limitations not present in Section 1983, because it was creating a new and different tool to achieve different ends.

Congress enacted Section 1983 as part of the Reconstruction-era Ku Klux Klan Act to create a broad *private* remedy for constitutional violations, regardless of the violating actor. *See* 41 U.S.C. § 1983 (applying liability to "[e]very person who" subjects another to a deprivation of rights). Congress enacted Section 12601, by contrast, over a century later for the narrow purpose of closing the gap revealed in *Lyons* and *City of Philadelphia* by authorizing the Attorney General to address systemic police misconduct. H.R. Rep. No. 102-242 at 137-139. The statutes cannot be read *in pari materia* simply because they both address constitutional violations when their language, history, and roles in the federal statutory civil rights framework are materially different. *See Erlenbaugh v. United States*, 409 U.S. 239, 245 (1972) (declining to apply *in pari materia* canon despite finding that two statutes "were both parts of a comprehensive federal legislative effort" because they "play different roles in achieving [ ] broad, common goals.").

Plaintiff grossly misunderstands the *in pari materia* cannon. "The rule of *in pari materia*—like any canon of statutory construction—is a reflection of practical

experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context. . . . The rule is but a logical extension of the principle that individual sections of a single statute should be construed together, for it necessarily assumes that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." *Erlenbaugh* 409 U.S. at 243–44. But where, as here, a new statute uses different language, the presumption is that "Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–63 (2006) (citation modified) (rejecting *in pari materia* for two provisions where Congress chose different language). Congress undoubtedly was aware of Section 1983 when it enacted Section 12601. If Congress wanted to create a broad Section 1983 cause of action for the United States, it would have done so by amending Section 1983 or adopting an identical cause of action. But that was not Congress's purpose and instead it chose to create a more limited cause of action with express limitations. Plaintiff cannot rely on the *in pari materia* cannon to rewrite Section 12601 to remove the express limitations that Congress built in.

Additionally, Plaintiff argues that Section 12601 must be construed broadly because it is a "remedial statute." Opp'n at 15. But the Tenth Circuit has warned that this canon "'is useless in deciding concrete cases'" because "'every statute is remedial in the sense that it alters the law" and "'knowing that a law is remedial does not tell a court how far to go.'" *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d

1147, 1160, n.6 (10th Cir. 2016) (quoting S*tomper v. Amalgamated Transit Union, Local 241,* 27 F.3d 316, 320 (7th Cir. 1994)). And even where that canon applies, it "doesn't give [a] court license to read into the statute something that isn't there." *Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1220 (10th Cir. 2018) (citation omitted).

Finally, Plaintiff argues that it may bring the present suit to vindicate its "sovereign interest," Opp'n at 27, but it cannot cure its defective Complaint by adding more theories of liability in its responsive pleading. *See Conway v. Gaia's Remedy Assisted Living, LLC*, No. 22-cv-01647-MEH, 2024 WL 6890295, at * 3 (D. Colo. Apr. 26, 2024) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003)). Even if it could, this general theory of sovereignty is exactly what *City of Philadelphia* disallowed, 644 F.2d at 199, leading Congress to enact Section 12601 to close a "gap in the law." H.R. Rep. No. 102-242 at 137. Further, the cases Plaintiff cites in support of this argument are inapposite because they involved other federal statutes granting the United States the authority to bring civil suits pursuant to other federal laws not at issue in this case. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000) ("It is beyond doubt that *the complaint"*—brought under the False Claims Act—"asserts an injury to the United States" in the form sovereign and propriety injury stemming from the unlawful fraud) (emphasis added); *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-431 (1976) (explaining that United States intervened in the case pursuant to

express authorization provided by 42 U.S.C. § 2000h-2). Plaintiff points to no authority allowing it to facially challenge state laws on a *parens patriae* theory without express statutory authorization.

### II. The Complaint fails to plead a plausible pattern or practice.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court is clear: a complaint that offers labels and conclusions or the formulaic recitation of the elements of a cause of action will not suffice, nor will one that "tenders naked assertions devoid of further factual enhancement." *Id.* (quotation omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

Plaintiff concedes that Section 12601 pattern or practice liability requires a showing that law enforcement agents engaged in "repeated, prescribed, or habitual courses of action." Opp'n at 11. Yet Plaintiff alleges none. Its brief confirms that its *entire* theory of liability rests on a general duty to enforce criminal laws. *See* Opp'n at 6-7. The Complaint's supposed "factual" allegations are purely conclusory and insufficient—a general duty to enforce the law is not a pattern or practice.

For over thirty years, the Department of Justice's enforcement of Section 12601 included comprehensive investigations led by career professional attorneys with decades of experience. *See* Mot. at 7-9; *see also* Defs.' Ex. A, Dkt. 30-1, Civ. Rts.

Div., U.S. Dep't of Just., *The Civil Rights Division's Pattern and Practice Police Reform Work: 1994-Present* 1–2 (Jan. 2017) ("2017 Rep."), at 3, 9–10. Rejecting that long history and established practice, Plaintiff filed this spurious suit without any investigation. The Complaint alleges no facts concerning how state officers investigate the large-capacity magazine restriction. It offers no examples of enforcement—representative or otherwise. It identifies not a single investigation, prosecution, nor conviction.

Instead, Plaintiff attempts to minimize what it must allege to survive a motion to dismiss, asserting that its allegations need only create a "reasonable inference that a pattern or practice exists." Opp'n at 5. But the cases it cites for that proposition confirm that Plaintiff must plead facts and cannot rest on conclusory allegations in a pattern or practice suit. *See United States v. Prashad*, 437 F. Supp. 3d 105 (D. Mass. 2020) (the Government alleged categories of discriminatory behavior and detailed specific incidents of harassment experienced by multiple female tenants); *E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074 (D. Haw. 2012) (the Government alleged that defendants recruited impoverished workers in Thailand, made those workers pay substantial "recruitment fees" to work for defendants, and then regularly threatened those workers with deportation, arrest, suspension, and/or physical violence); *United States v. Nobel Learning Communities, Inc.*, 676 F. Supp. 2d 379 (E.D. Pa. 2009) (the Government alleged

that defendant denied enrollment or disenrolled twelve identified students located in six states).

After forgoing its well-settled opportunity to investigate under Section 12601 *before* filing this lawsuit, Plaintiff now asks this Court to give it "an opportunity to develop a factual record." Opp'n at 8. But Rule 8's liberal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Plaintiff's reliance on *Berk v. Choy*, 607 U.S. 187 (2026), does not change things. There, the Supreme Court held that a state law requiring an affidavit of merit in a medical malpractice suit does not apply in federal court. *Id.* at 199. Rule 8 may not require affidavits of merit, but it does require more than threadbare allegations completely devoid of facts to survive a motion to dismiss and obtain discovery. *See Iqbal*, 556 U.S. at 678.

Plaintiff fails to meet that standard, and its Complaint should be dismissed under Rule 12(b)(6) for its failure to plausibly allege a cause of action.

### III. Plaintiff lacks standing because the alleged harm is not redressable by a favorable ruling.

Plaintiff claims to bring this Section 12601 suit to "vindicate the rights of Colorado citizens." Compl. ¶ 6. But the harm it alleges—supposed unconstitutional restrictions on Coloradans' Second Amendment rights—will not be redressed by a favorable ruling.

Plaintiff states that it did not choose to sue the CBI and CSP at "random," but purposefully chose Colorado's statewide law enforcement agencies so that it could include the State of Colorado in this lawsuit. *See* Opp'n at 28. But an adverse ruling against the State of Colorado does nothing to change the discretionary decisions of actors not named in this lawsuit, a fact Plaintiff seemingly concedes by acknowledging "other juridical entities" might continue to enforce the large-capacity magazine restriction. *Id.*

Plaintiff instead attempts to again minimize what it must allege to survive this Motion to Dismiss. It argues that its Complaint adequately alleged a redressable injury because "standing does not require 'complete redressability.'" *Id.* (quoting *Sanchez v. Torrez*, 173 F.4th 1202, 1213 (10th Cir. 2026)). *Sanchez* does not support Plaintiff's position. There, private landowners sued state officials with special authority to enforce a judicial decision, and the district court dismissed the case because private litigants also had enforcement rights. *Id.* at 1211, 1216. The Tenth Circuit found error because a favorable ruling against the defendants would have redressed and eliminated the harm alleged: "the risk of state prosecution." *Id.* at 1217. It was in that context that the court explained that "a favorable decision must redress *an* injury, not *every* injury," because "[r]edressability turns on the 'the connection between the alleged injury and the judicial relief requested.'" *Id.* at 1216–17 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

Here, the requested relief will not redress the alleged injury—enforcement of the large-capacity magazine restriction. Unlike *Sanchez*, where plaintiffs sued all the state officials with enforcement responsibility, Plaintiff here has only filed against two investigative agencies. Regardless of the outcome, every district attorney will remain free to prosecute every single violation of the large-capacity restriction, with the assistance of every other law enforcement agency. A favorable decision will thus not result in *any* real-world relief because *every* violation of the large-capacity magazine restriction can continue to be enforced.

To get around the fact that Section 12601 cannot reach prosecutors' independent prosecutorial decisions (which Plaintiff does not contest), Plaintiff intimates that it will ask the Court to enjoin Colorado's elected district attorneys under Rule 65(d), even though none are a party to or have received notice of this lawsuit. Opp'n at 30 (citing *Am. Civ. Liberties Union v. Johnson*, 194 F.3d 1149 (10th Cir. 1999)). The suggestion lays bear the absurdity of this entire endeavor: because Section 12601 only reaches law enforcement conduct, Plaintiff sued two state-wide law enforcement agencies to obtain a judgment against the State, as a backdoor means to obtain an injunction against prosecutors for their independent prosecutorial decisions, which is relief unavailable under Section 12601. Rule 65(d) is not a basis to circumscribe the carefully tailored limitations of Section 12601. And in any event, relief would necessarily be limited to circumstances where particular district attorneys were working in "active concert" with these two agencies, not

when they make independent prosecutorial decisions unrelated to these two agencies (i.e., every violation could continue to be prosecuted). Plaintiff's convoluted approach confirms two things: 1) the injury it alleges is not redressable by a favorable ruling; and 2) Section 12601 cannot be used to facially challenge state laws because doing so leads to inane results.

### IV. The court should dismiss without leave to amend.

"[A]mendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). As explained herein, Section 12601 does not authorize facial challenges to legislative enactments, and the harm is not redressable as a matter of constitutional standing. These are fatal flaws that cannot be cured by amendment. Plaintiff seeks leave to amend should the Court grant the Motion, Opp'n at 30, but offers no explanation for how the fundamental legal deficiencies might be cured. The Court should dismiss without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated: August 14, 2026

Respectfully Submitted,

**PHILIP J. WEISER**
Attorney General

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*
Peter Baumann, *Senior Assistant Attorney General*
Gabe Podesta, *Senior Assistant Attorney General*
Sam Wolter, *Assistant Attorney General*
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*